59   375
23a  378
25a  164
59   375
56a  549
59   375
78a  170

# MARCUS WALKER

*v.*

# ORAMEL S. HOUGH.

1.  FRAUD—*what amounts to.*  Fraud vitiates every contract, but every false affirmation does not amount to a fraud—a knowledge of the falsity of the represensation must rest with the party making it, and he must use some means to deceive or circumvent.

2.  SAME—*of the proof required.*  To justify a court in rescinding a contract, executed by both parties, on the ground that one of the parties was induced to enter into it through fraud practiced by the other, the testimony must be of the strongest and most cogent character, and the case a clear one.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. HENRY S. MONROE and Messrs. HOWE & RUSSELL, for the plaintiff in error.

Messrs. DENT & BLACK, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, praying that a sale of certain lots in Chicago, by Hough to Walker, for stock in the Chicago Patent Wood Hangings Company, be cancelled, and the lots reconveyed to complainant on the return of the certificates of the stock, on the allegation of false and fraudulent representations, on which complainant relied, of the value of the stock.

Much testimony was heard, and the court found that Walker had made and caused to be made to complainant material and fraudulent representations, whereby he was induced to, and did convey to Walker, the lots described in the bill of complaint; and on complainant depositing with the court, to be surrendered to Walker, the certificates of stock

issued by him to complainant, a reconveyance of the lots was decreed, and that he be reinvested with the title to the lands.

To reverse this decree, Walker brings the record here, by writ of error, assigning, as the only error, that it is contrary to the evidence.

The substance of the charges in the bill is, that Walker, through his agent, represented to complainant that all the stock of the company had been taken but five hundred shares; that the company was in a flourishing condition, and was making large sums of money, over and above all costs and expenses, to the extent of $5000 per month; and with the intent to cheat, wrong and defraud complainant, and to induce him to sell and convey the lots, Walker presented to him what purported to be a true and exact statement of the assets and liabilities of the company; and with the further intent to defraud the complainant, Walker stated to him that Allen & Mackey, leading dealers in decorative paper, in Chicago, had purchased of him the right to use the patent in the city of Chicago for one year, paying him therefor $2500; that this firm had examined the patent, and, from the results of their investigation, they had pronounced it to be a great success, and that it would come into general and constant use, and by the interest that firm took in the patent, it would be brought favorably before the public; that at the end of a year they would be desirous of purchasing other and valuable rights to use the patent and be willing to pay the company liberally therefor, and would induce others to buy; all which would greatly enhance the value of the stock—complainant's among the rest. And with the further intention to defraud complainant, Walker further stated to him that he, as the owner of the patent, had organized the Chicago company, which, having been in operation but two months, had actually made, over and above all expenses, $10,000, thereby causing complainant to believe it would be safe and profitable to become a stockholder.

It is then alleged that, relying on these representations, complainant conveyed the lots to Walker for two hundred and fifty shares of stock, valued at $40 a share, and charges that all the representations were false and fraudulent, and that the stock was worthless.

The answer of Walker denies all the charges of false representation, and alleges that complainant investigated and thoroughly examined the patent, the working thereof, and the business and affairs of the company, and satisfied himself, from such personal examination and investigation, that the patent was a valuable improvement. He denies representing to complainant the arrangement with Allen & Mackey, as charged, but says he negotiated with them a license to use the patent in Chicago for one year, and if the arrangement had been carried into effect, he expected great gain to result therefrom ; and denies that complainant was in any manner induced to purchase the stock and execute the deed by reason of any representations made to him concerning the firm of Allen & Mackey. He also denies that he represented to complainant that the company had made $10,000 in two months, as alleged, and alleges that the trade was made after complainant had examined, personally, into the business and affairs of the company. He denies that the invention is worthless, or that the stock is of no value ; and he alleges that immediately prior to filing the bill of complaint, complainant, from the personal investigation he had made, expressed himself perfectly satisfied with the trade, and that the trade was made by defendant in good faith, and complainant believed the stock was a fair consideration for the lots of land. He then alleges that, since making the trade, a bill passed the general assembly, locating a public park near these lots, whereby it was supposed their value would be greatly enhanced, and charges that as the moving cause to filing the bill.

Are the allegations of complainant sustained by the proofs in the cause ? Do they so greatly preponderate in his favor as to justify allowing the prayer of his bill ?

The parties were sworn, and many witnesses, in regard to the utility of the invention, a large majority of whom testify in its favor, and say that in the hands of skillful persons it is a success, and is in great favor in the cities of New York and Boston.  In some instances, when applied to plastered walls in Chicago, and by unskillful persons, by those not instructed in its preparation and application, it proved a failure, while in one case, when the work was conducted by a person skilled in the business, it was a perfect success.

The parties are at issue upon the prominent allegations of the bill; if they are sustained by the proof, the decree must be affirmed.

All will concede that fraud vitiates every contract, and the concession will be equally universal, that every false affirmation does not amount to a fraud.  A knowledge of the falsity of the representation must rest with the party making it, and he must use some means to deceive or circumvent. *Sims* v. *Klein*, Breese, 302.

There is no proof that Walker made the representations charged, except that by complainant himself, and he is contradicted by Walker.  Complainant, holding the affirmative of this issue, is bound to prove it by a preponderance of testimony; this he has not done.  Defendant's denial under oath, is as potential as complainant's assertion under the same sanction, and being oath against oath, the fact is not proved.  It is said, by complainant, his testimony is corroborated by Strong. We do not find that Strong testified to this point, or was interrogated in relation to it.  Complainant claims, too, that Strong was Walker's agent, and that he made this representation. If he did, about which we have no other proof than complainant's testimony, there is no proof that Walker authorized the statement, or that Strong knew it to be false.  Strong states that the weight of the representations he made, he received from Morey, the treasurer of the company, and from the bookkeeper and secretary, and that, at his own instance, complainant went to the office of the company, investigated the

matter thoroughly, and talked with all the parties, Walker being present. The books, containing the transaction with Allen & Mackey, were open before him, and he saw there its whole length and breadth, and that was the payment by Allen & Mackey to the company of $1000, the purpose of which is fully explained by the testimony of Walker. The books, to this extent, corroborate Walker. It was a matter of no importance to complainant whether the sum paid to the company was $1000 or $2500; it was sufficient for him to be satisfied that the company had the favor of a firm so well known in the city as Allen & Mackey. The precise terms of the contract with them complainant did not see the necessity of inquiring into, as they were of no particular importance. Had complainant considered it a matter of any importance, it was very easy for him to interrogate that firm about the terms, as it was located in the near neighborhood of the company's office. The representation of Strong, if made, could not have deceived or misled complainant, as it was set right by the books, which were open to him. It is quite evident complainant did not rely on these representations; if he had intended to rely upon them, why consult the books of the company? When they were consulted, no such arrangement was found there, and yet complainant consummated the trade and executed a warranty deed, and received the stock. It can not be that complainant was induced to make the contract by what Strong said, when the books told a different story. But the proof tends strongly to show that, in this particular transaction, Strong was the agent of complainant to trade these lots for this stock. Walker so testifies and so does Strong. Strong subscribed for the stock, as agent of complainant, and was to have a commission in the shape of a certain number of the shares, and, stimulated by this expectation, it was to his interest to make such representations as would induce the trade, in no way, however, authorized by Walker to make them.

There is not a word of proof that the account, stated in ex-
hibit "A," was known by Walker to be untrue; nor is it
proved that it was not substantially correct.  There is not the
least ground for supposing that the account was concerted for a
purpose, or to create false appearances—one of the orders men-
tioned in it being afterwards withdrawn, the sender claiming
it was optional with him so to do.  Walker, himself, may
have been deceived as to the amount.  The business of keep-
ing and stating the accounts of an incorporated company
is usually entrusted to the under officers of the company,
and of the accuracy and truth of which, the president
of the company may have no knowledge.  It does not
appear that Walker had any knowledge that the statements in
it were not perfectly correct.  And it is in proof, by one of
complainant's witnesses, that he examined the books of the
company and found them substantially correct.

We are not prepared, on this state of proof, to rescind a
contract executed by both parties.  To justify a court in doing
so, the testimony must be of the strongest and most cogent
character, and the case a clear one.

It is evident, from a view of all the testimony in the
record, that complainant imagined he had made a great specu-
lation by selling lots for which he never demanded more
than $5000, and getting stock in a company, valued to him at
$10,000, and was willing, with such a bright prospect before
him, to take some risk.

It appears, when the stock of the company was all taken,
and much of it by some of the best business men of the city,
Walker retired, and it was reorganized, with complainant as
one of the directors.  What, with the want of instruction of the
workmen called to apply these hangings, and want of knowl-
edge and energy and care of the board of directors, who had
their own more important matters to attend to, the invention
failed to receive popular approbation, the company ceased to
do business, and its stock became worthless.  Complainant is
a loser by engaging in it; but he did so, uninfluenced, we

believe, by any misrepresentations of Walker. It is not for every losing bargain a court of equity will interpose to relieve.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*