HENRY FAUNTLEROY *et al.*

*v.*

SEXTIUS N. WILCOX *et al.*

1. FRAUD—*representations not relied on, no ground for avoiding contract.* The fact that the owner of property which is the subject of a contract makes representations as to their quality which prove to be untrue, will not furnish ground for avoiding liability under the contract, where the other party does

478      FAUNTLEROY *et al. v.* WILCOX *et al.*     [Sept. T.

Opinion of the Court.

not rely on such representations, but enters into the contract upon his own investigation and examination.

2. A party disposing of logs to be manufactured into lumber, is not required to under-estimate their value, but, on the other hand, he will have the clear right to extol their superior quality, by any and all fair means, to procure a good price, and if he refuses to warrant their quality, and requires the other party to examine for himself before making the contract, such other party will have no right to complain, though the seller gave it as his opinion that the logs would produce a greater per cent of superior lumber than was actually realized.

3. SAME—*every false affirmation does not amount to.* While it is true that fraud vitiates all contracts, yet every false affirmation does not amount to a fraud. A knowledge of the falsity of the representation must rest with the party making it, and he must use some means to deceive or circumvent.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. MELVILLE W. FULLER, for the appellants.

Messrs. WAITE & CLARKE, for the appellees.

Per CURIAM: This was a bill in equity, brought by Sextius N. Wilcox and Lester C. Morgan, in the Superior Court of Cook county, against Henry Fauntleroy, F. S. Fauntleroy, and Eugene Fauntleroy, to recover the purchase price of certain logs, under a contract in writing, and to close up a joint adventure created under said written contract. The defendants answered the bill, and also filed a cross-bill. Both were heard together, and on the hearing the cross-bill was dismissed, and relief was decreed under the bill. To reverse the decree, the defendants in the bill have brought this appeal.

Elaborate briefs have been filed by counsel representing each side of the case, which are confined chiefly to the discussion of questions of fact.

We have carefully examined the evidence and the arguments of counsel, but we do not deem it necessary to enter upon a critical or minute discussion of the testimony heard by the court on the trial of the cause, for the reason that it would be of no practical benefit to either of the parties or the profession.

In February, 1873, appellees had, on White river, Newagee

county, Michigan, a large quantity of pine saw-logs, estimated to be not less than 7,000,000 nor over 9,000,000 feet, board measure. The appellants were lumbermen in Chicago. On the 6th day of February, 1873, a joint adventure was formed, consisting of appellees of the one part and appellants of the other, for the sale and manufacture of the logs into lumber. The terms and conditions of the agreement entered into were reduced to writing, and signed by the parties on the 6th day of February, 1873.

Under the contract, the appellees agreed to use their entire capital, which was not to be less than $30,000, and from the capital and sales of lumber appellants were to pay all expenses for driving, rafting and sawing the logs, and shipping and handling the lumber manufactured; also, yard rent and piling expenses, as they accrued. And after they were provided for, all balance of money which could be spared from the capital and credit of appellants was to be paid to appellees, from time to time, for the logs furnished by appellees, at certain specified prices named in the agreement, until the logs were fully paid for. The appellants also agreed, by the contract, to use their best efforts to save out of the business, by May 1, 1873, at least $10,000, to be paid appellees as an advance on the logs.

The contract contained a further provision, as follows: "It is further understood and agreed by the parties hereto, that, unless they may hereafter mutually agree to continue this business for a longer time, it shall cease and be closed up in the following manner: On April 1, 1874, at that time, an account of stock shall be taken of all the kinds and qualities of lumber then on hand, and, after subtracting from the same the amount of lumber hereinbefore mentioned, as per the terms of this contract, the balance shall be sold at the highest prices at that date that can be obtained, and the profits of the business thus ascertained shall be divided equally, it being understood that all yard expenses and liabilities from that date shall be assumed by said first parties; it being the intention of the parties hereto, first, to buy of said second parties all the logs now in or going into White river on the jobs aforesaid, at the prices

named above, and, from that time forward, that both first and second parties shall be equally interested in the product and sale of product of said logs, and to have the entire advantage to them of the retail lumber market, and also the use of the yards, capital and credit of said first parties to the joint adventure; and, further, that the joint adventure shall own said logs and the log marks thereon, and have the same without interest for any amount at any time unpaid on same, which, at the prices put upon said logs, is understood to be equal in advantage to the capital and good will of said first parties, and their services in the business."

The main ground relied upon by appellants to defeat the complainants in their action, was, that they were induced to enter into the contract by fraudulent representations made by appellee Wilcox in regard to the quality of the logs which were the subject matter of the contract.

The facts and circumstances connected with the making of the contract will not, however, sustain the position assumed. Wilcox, no doubt, gave it as his opinion that the logs were of a good quality of timber, but he had not seen them, and so informed appellants, although he had seen the timber before it had been cut; but he would not sell unless appellants would go or send a person to examine the logs. One of the appellants went to the logging camps in Michigan, where ample facilities were afforded him, and made a personal examination of the logs. He came back and reported the quality and condition of the logs, and then, after some time spent in negotiation, the contract was prepared and executed, and this, too, after Wilcox had expressly refused to warrant the quality of the logs.

Now, conceding it to be true that Wilcox made representations concerning the quality of the logs, it is apparent appellants did not rely upon these representations, but, on the other hand, entered into the contract on information derived from their own investigation and examination.

After the return of appellants from Michigan, there was much dickering between the parties, and expressions of opin-

ion.   The contract was written, changed, and re-written, and, finally, the original price of the logs was somewhat reduced, and the contract finally executed.

If a contract entered into after such mature deliberation as was exercised in this case by appellants could be set aside and avoided, we can scarcely conceive of any case where a contract might not, on the same principle, be avoided.

It was not to be expected of Wilcox, in making the contract, nor did the law require it, that he should underestimate the value of his property.   But, on the other hand, he had the clear right to extol its superior qualities, and by any and all fair means induce appellants to pay him a good price therefor; and when he refused to warrant the quality of the logs, and required appellants to examine for themselves before making the contract, they have no legal ground for complaint, even though he insisted and gave it as his opinion that the logs would produce a greater per cent of superior lumber than was actually realized.

While it is true, fraud vitiates all contracts, yet every false affirmation does not amount to a fraud.   A knowledge of the falsity of the representation must rest with the party making it, and he must use some means to deceive or circumvent. *Walker* v. *Hough*, 59 Ill. 375.

The fact that appellants made a personal examination of the logs before making the contract, shows they did not rely upon what was said by Wilcox; and the fact that Wilcox insisted upon an examination, repels the idea that he was trying to deceive.

It would be difficult to conceive how appellants could be deceived by any opinion given by Wilcox, when they sent one of their number, who was believed to be experienced, to examine and investigate for themselves.   If, then, the contract was fairly entered into by the parties, and appellees have substantially kept and performed their part of the agreement, which the evidence seems to establish, their right of recovery can not be questioned.

We have given the evidence a careful investigation, and we are satisfied the decree was fully justified by the proofs. It will, therefore, be affirmed.

*Decree affirmed.*