## State Bank of Freeport v. Seymour A. Blake, and Joel B. Whitehead, Assignee of the Estate of Seymour A. Blake, Insolvent.

1. FRAUD—*Must be Proved.*—Fraud in the execution of a judgment note must be proved by a preponderance of the evidence.

2. JUDGMENTS—*By Confession, Courts of Law Exercise Equitable Jurisdiction Over.*—Courts of law exercise an equitable jurisdiction

over a judgment by confession, and will not grant relief against it if it appears that the debtor owes the amount of the judgment, and has no defense, either legal or equitable.

3.  PRACTICE—*When a Cognovit Takes Effect.*—A judgment on confession is not invalid merely because the cognovit was signed and the affidavit signed and sworn to when the warrant of the attorney authorized the confession.  The cognovit takes effect only when filed in court.

**Order Vacating a Judgment by Confession.**—Trial in the Circuit Court of Winnebago County; the Hon. CHARLES E. FULLER, Judge, presiding.  Appeal by the judgment plaintiff.  Heard in this court at the May term, 1898.  Order reversed with a finding of facts.  Opinion filed September 26, 1898.

## STATEMENT.

On September 4, 1897, the State Bank of Freeport recovered a judgment by confession in the Winnebago Circuit Court, in vacation, against Seymour A. Blake, for $3,515.68 and costs, and execution was issued thereon and levied upon personal property of defendant.  On September 13, 1897, Blake made an assignment to Joel B. Whitehead, for the benefit of creditors.  At the next term of the Circuit Court the assignee and Blake entered their motion to quash the execution and vacate the judgment.  Upon a hearing of the motion an order was entered annulling and vacating the judgment and quashing the execution and adjudging that the State Bank of Freeport pay the costs of the suit.  This is an appeal from that order.

On September 3, 1897, a private partnership, composed of Seymour A. Blake, Oscar Norton and Charles A. Norton, having the firm name of Blake, Norton & Co., and "Bank of Durand," and doing business at Durand, in Winnebago county, was indebted to appellant upon two promissory notes for money loaned, one for $3,500, dated August 1, 1897, and the other for $5,500, dated August 6, 1897, each due in thirty days from its date, with interest at seven per cent.  These notes were renewals, and appellant had been carrying the indebtedness for a long time.  The money had been loaned to Blake, Norton & Co., to assist it in carrying on its private banking business.  Appellant held as collateral certain notes purporting to be signed by residents of

Durand and farmers in the vicinity whom appellant's officers had ascertained to be responsible. Blake was the father-in-law, and Oscar Norton the father, of Charles A. Norton. Blake and Oscar Norton were old men, and left the management of the business chiefly to Charles A. Norton. The latter forged a large amount of paper, which he placed with appellant and others as collateral. On or about September 1, 1897, the Winnebago National Bank, a creditor of Blake, Norton & Co. to the amount of $5,900, secured by collaterals, ascertained that part or all of its collaterals were forged, and went to Charles A. Norton and demanded other security, and Charles A. Norton induced Blake to give a mortgage upon his farm of 240 acres to secure said debt. The mortgage was filed for record September 2, 1897. Charles A. Norton then absconded. Appellant's officers learned these facts in the forenoon of September 3, 1897. Henry H. Antrim, cashier of appellant, then went to Durand, taking with him the notes and collaterals the bank held against Blake, Norton & Co. Antrim met Blake in Durand and together they went over the notes and collaterals and appear to have reached the conclusion most of the collaterals were forgeries. They made an appointment to meet at Blake's farm in the afternoon. They did meet there and had a conference. Appellant's $3,500 note was then past due, and its $5,500 note had two days to run. The result of their talk was that Blake gave appellant a judgment note for $3,500, signed by himself only, and Antrim surrendered to Blake the past due $3,500 note of the firm. About nine o'clock in the evening of September 3d, M. Marvin, an attorney practicing law in Freeport, in Stephenson county, signed the cognovit, and at about the same hour the affidavit of the execution of the note and power of attorney was signed and sworn to by Antrim, and these papers, with the note and power of attorney, were handed to plaintiff's attorney, who had already drawn a declaration and plea. Appellant was located at Freeport, and its attorney and Marvin both lived there, and there these papers were signed. The power of attorney authorized a confession of judgment for principal and interest, and $15 attorney's fees, in term

time or vacation at any time after the date thereof, by J. H. Stearns or any other attorney in any court of record. On the morning of September 4, 1897, the declaration, note and power of attorney, affidavit of their execution, and cognovit, were filed with the circuit clerk of Winnebago county in vacation, and judgment was entered thereon. It is argued here that the judgment was properly vacated because Marvin signed the cognovit before the time to confess judgment had arrived; because Antrim prematurely signed and swore to the affidavit of the execution of the papers; and because Blake's signature to the judgment note was procured by Antrim by fraud and deceit.

William Marshall, attorney for appellant.

A. D. Early, attorney for appellees.

Mr. Presiding Justice Dibell delivered the opinion of the court.

The cognovit was signed and the affidavit was signed and sworn to about 9 p. m. of September 3d. This was done at Freeport, in Stephenson county. The papers were entitled in the Circuit Court of Winnebago County, and its county seat was Rockford. It is evident the papers were not designed to be used that night of September 3d, and that they could not reasonably be expected to reach Rockford till September 4th. They had no force, effect or validity till filed with the circuit clerk at Rockford. They were not filed nor used till September 4th, when by the terms of the power of attorney judgment could be confessed. We are of opinion the judgment is not invalid simply because said papers were signed and sworn to the evening preceding the day when the judgment could be confessed. Marvin did not confess the judgment on the evening of September 3d, by the mere act of signing the cognovit then. It was the filing of the cognovit so signed, with appellant's declaration, in the office of the clerk of the court named in the caption of the papers that constituted the confession. It is common practice for the attorney who

signs the confession not to attend when the judgment is entered, but to intrust the signed cognovit to the attorney for plaintiff. The legal effect is the same as if Marvin had retained the cognovit after signing it, and had brought it to Rockford the next morning and personally delivered it to the clerk. We think these objections not well taken.

The proofs at the hearing of the motion to vacate the judgment consisted of documents and affidavits. No witness was examined in open court. The trial judge therefore did not possess the advantage over us of seeing the witnesses and hearing them testify. He heard the case only on paper, as we are doing, and we have every opportunity he had to determine the force and effect of the testimony. Blake admits he signed this note at the close of the conference, and designed to sign a note to appellant for $3,500. The burden of proof was upon him to show that he was deceived and defrauded, and that the instrument is not what he agreed to. Walker v. Hough, 59 Ill. 375; Hartford Life Insurance Company v. Gray, 80 Ill. 28; Ross v. Sutherland, 81 Ill. 275. Blake's affidavit is largely devoted to a recital of the wrongs he has suffered at the hands of his son-in-law —matters which are calculated to strongly excite our sympathy and indignation, but which have no bearing upon the rights of appellant. He further testifies that he agreed to give a new note; that Antrim presented one which he so far examined as to refuse to sign it; that Antrim drew another; that he did not have his glasses with him, but could read parts of the note without them; that he saw fine print at the bottom of the note which he could not read; that he noticed the note did not look like any note he had ever been acquainted with; that he asked Antrim to read and explain it to him, and that Antrim did read it to him before he signed it. But he states that "Antrim did not utter any word or words that this affiant comprehended which indicated that the fine print set forth a warrant of attorney, or a power given anybody to do anything, and did not mention the name of James H. Stearns, and did not say anything that indicated it was a judgment note, and did not inform or explain to this affiant that it was a

judgment note; and whatever the said Antrim did say to affiant he said intending this affiant would not comprehend the meaning and effect of his words." This is accompanied by a statement that Blake was then in a state of great mental anxiety on account of his son-in-law's forgeries, and the evident result of depriving Blake of all his property in his old age. Various things are related which he claims Antrim said to quiet his apprehensions and secure his signature.

Antrim's affidavit gave a circumstantial account of all that was said and done between Blake and himself that day. He testified that he told Blake his firm was under great obligations to appellant; that appellant had helped them through the panic of 1893, and during the fall of 1896, when so many banks were failing; that the forgery of the collaterals left appellant in a bad shape; that Blake had given a mortgage for the full amount of its claim to a creditor who had never assisted Blake, Norton & Co. as appellant had done, and now they wanted Blake to help appellant. He testified he fully explained to Blake that with their present notes they could not get judgment till the next term of the court, when probably all the other creditors would also get judgment and appellant would be no better off than they; that he read and explained the new note to Blake, told him that it was a judgment note, and that if he signed it appellant could enter up judgment on it at once, and that would put appellant, as to $3,500 of its claim, next to the mortgage he had given the Winnebago National Bank; that Blake then signed the note, and Antrim again explained to him the difference between the old note and the new.

Each of the affidavits contained much matter we have not set out. Antrim denied in detail each statement Blake claimed Antrim had made which was calculated to mislead or deceive. He also contradicted Blake as to the latter's apparent mental condition. There were affidavits of other parties on both sides, but none relating to the execution of the note. Antrim's version of the transaction is quite as

reasonable and probable as that given by Blake. If the case rested upon these two affidavits we should say there is no preponderance of the evidence that the execution of the note was procured by fraud, and that on such testimony contracts can not be set aside. But there is further evidence. After judgment was entered, Antrim and Stearns, then attorneys for appellant, met at the residence of Blake, the day after Blake signed the note, and they informed Blake that judgment had been entered upon said note and an execution placed in the hands of the sheriff, and that he might be expected to make a levy at any time. Blake replied that he was perfectly satisfied. They had a long discussion as to the course to be pursued after the levy, and as to dower and exemptions and the selection of a custodian; and at the close of the interview Blake told Antrim, " 1 have no fault to find with you." These facts are established partly by Antrim and partly by Stearns, and partly by both of them. They are not denied by Blake or any one. Stearns and the sheriff were there again September 9th, and had another interview with Blake. If Blake supposed he was signing an ordinary note on thirty days' time he would naturally have been surprised when he learned next day that judgment had already been entered, and would have been indignant when he learned he had been misled and deceived into signing a judgment note with such sudden and unexpected consequences. Nothing in the later interviews as proved indicated surprise or displeasure, but on the contrary that he expected what occurred and was satisfied therewith. In our judgment the preponderance of the evidence on this subject is with appellant, and the judgment should not have been vacated upon this proof. As no one but Blake and Antrim were present when the note was signed, and they have each given their version of the interview in a manner selected by appellees, and the evidence does not justify a vacation of the judgment, we see no reason for remanding the cause.

Moreover, courts of law exercise an equitable jurisdiction over a judgment by confession, and will not grant relief

against it "if it appears that the debtor owes the amount of the judgment, and has no defense, either legal or equitable, to the debt for which the judgment is rendered. Farwell v. Huston, 151 Ill. 239; Mumford v. Tolman, 157 Ill. 258; Packer v. Roberts, 140 Ill. 9; Hier v. Kaufman, 134 Ill. 215, 225; Colson v. Leitch, 110 Ill. 504; Cassem v. Brown, 74 Ill. App. 346. Here Blake, as one of the members of Blake, Norton & Co., owed the debt; it was past due; neither Blake nor the firm had any defense to it. Antrim surrendered the old note to Blake, and Blake accepted and retained it. He did attach it to his affidavit upon the motion to vacate the judgment, but that was not filed till October 12th, after the term began, and then was not accompanied by any offer to return it to appellant. By the action of the court below, appellant has not only been deprived of the security and priority it had gained by its judgment and execution, but its note has in effect been declared to have been obtained by fraud, and therefore to be void, and it has been left without any note or evidence of the existence of its *bona fide* debt. It has also been deprived of obtaining a judgment at the then next ensuing term, as it might have done if Blake had immediately tendered back the original $3,500 past due note. We can not think this order was the proper exercise of an equitable jurisdiction. Kingman & Co. v. Reinemer, 58 Ill. App. 173, and 166 Ill. 208, is much relied upon to establish a contrary doctrine. There the fraud was established by two witnesses against one, and by corroborating circumstances; the principal part of the debt was not due, and the equitable circumstances existing in this case in support of the note were not present. In that case the parties by agreement consolidated the motion to vacate the judgment with a replevin suit, and the course there pursued was by consent. We do not see that it is in point upon the vital questions here. For the reasons stated the order appealed from will be reversed.

FINDING OF FACTS TO BE MADE A PART OF THE JUDGMENT.

We find that the judgment rendered in this cause in favor

of the State Bank of Freeport and against Seymour A. Blake was confessed by due authority for a debt *bona fide* due, and is a valid judgment; that the execution by Seymour A. Blake of the note and power of attorney upon which said judgment was confessed was not procured by fraud, concealment, misrepresentation and deceit as charged, and that none of the allegations of fact made against the validity of said note, power of attorney and judgment, are sustained by the proofs.