# Eugene W. Yeomans v. Frances Lane.

1. VARIANCE—*Between the Pleadings and the Proofs.*—Proof of a partial failure of consideration will not support a plea of no consideration in an action on a promissory note.

2. PROMISSORY NOTES—*Innocent Purchaser Not Required to See to the Application of the Purchase Money.*—A purchaser of a promissory note in good faith and for value will not be required to see to the application of the purchase money, and no misappropriation of it to which he is not a party will affect his rights.

3. SAME—*Defenses by Innocent Purchasers.*—A party who puts his note in the hands of another to be sold or negotiated will not be permitted, after it is done, to say to one who has taken it in good faith, for value, that he does not owe such note.

4. SAME—*Negligence in Failing to Read a Note Prior to Signing It.*—The failure of the maker to read a note prior to signing it can not be pleaded as a defense to it in the hands of an innocent holder.

5. SAME—*Fraud and Circumvention Necessary to Invalidate Instruments.*—The fraud and circumvention necessary to invalidate an instrument must be fraud in obtaining the execution of such instrument.

Assumpsit, on a promissory note. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1901. Reversed and remanded. Opinion filed March 6, 1902. Rehearing denied March 27, 1902.

Statement.—December 21, 1897, the appellee executed a promissory note for the sum of $1,500, payable to the order of William A. Bowles, ninety days after date, with interest at the rate of six per cent per annum. Immediately following the note, on the same paper, and preceding the signature of appellee, is a warrant of attorney authorizing the confession of judgment any time after date, including $200 attorney's fees. The note was indorsed by Bowles, the payee, to one A. T. Myers, and Myers indorsed and delivered it to appellant. March 1, 1890, judgment by confession was entered on said note in the Circuit Court of Cook County in favor of appellant and against appellee, for the sum of $1,616.

November 27, 1899, on motion of appellee's attorney, the Circuit Court allowed the defendant to plead, the judgment to stand as security. Appellee pleaded two pleas: First,

Yeomans v, Lane.

that the note was made without any good or valuable consideration, and that the assignment of the note to the plaintiff, Yeomans, was made with notice to the plaintiff that there was no consideration for the same, and that said plaintiff paid no consideration for the assignment of the note to him. Second, that the execution of said note was procured by the payee with the co-operation of Albert T. Myers by fraud and circumvention; that at the time said note was executed defendant was a stranger, temporarily in Chicago, looking after certain real estate and litigation of Frederick L. Wood of California. That defendant was without means for the prosecution of said business and her personal expenses, and in need of $1,500 for said purposes; that defendant had employed said Myers to look after said real estate, and said payee, an attorney, to assist defendant in the prosecution of said litigation or settlement thereof, all of which matters were known to Myers and payee. That at their suggestion defendant procured a deed to be made by Wood of his real estate to defendant, which deed was filed for record November 7, 1897, in Cook county, and title to said property so remained in defendant ever since. And defendant being desirous of raising money it was, at and before the making of said note, suggested to defendant by Myers and payee that defendant make an ordinary promissory note to the order of said payee for $1,500, payable ninety days thereafter, and they would indorse same, and could and would sell the same at once and procure the proceeds for the uses of the defendant; that no mention was at any time made that a judgment note should be given; that Myers and payee stated that the time before said note would mature would enable defendant to settle said litigation and thereby put herself in funds by which she would be able to meet and pay the note proposed to be executed, all of which representations defendant relied upon and believed. That Myers and payee, intending and contriving to cheat and defraud the defendant, intended and contrived to have the defendant execute a judgment note without her knowledge, and deliver same to Myers and

payee to enable them to place said note in judgment at any
time after delivery thereof, to levy an execution, and sell the
real estate for their uses, all without service of process upon,
and notice to defendant; that defendant, confiding in and
relying upon said Myers and payee, upon the suggestions
aforesaid, and intending to execute only a promissory note,
on December 21, 1897, signed the promissory note which is
sued upon, which had printed therein in fine print the war-
rant of attorney for the confession of judgment upon said
note at any time after delivery thereof, and a blank therein
for the insertion of attorney's fees, and Myers, immediately
before said note was signed, had drawn said note, not in the
view of the defendant, and brought same to defendant to
sign, and the written portion of said note was in large bold
writing and the figures, $200, written in fine print, so that
defendant, although using all due care in reading said note,
did not notice said fine printed warrant of attorney and
$200 attorney's fees, and signed said note and handed same
to Myers, who took same to payee, who was in an adjoin-
ing room, and not present at the making and signing of
said note.   That thereafter Myers and payee, carrying out
their fraudulent intention as aforesaid, did not sell and
dispose of said note, but the same was in the name of
plaintiff, on March 1, 1898, put in judgment in the Circuit
Court of Cook County for the face thereof, interest and
part of attorney's fees.   That thereafter, in December, 1898,
execution issued, levy was made thereon and said real estate
sold to plaintiff for the full amount of said judgment, inter-
est and costs.   That after delivery of said note and finding
that said Myers and payee did not sell said note, she
demanded return thereof, but same was not returned, and
she knew nothing of said note being a judgment note and
providing for attorney's fees, or of the said judgment, levy
and sale, until September, 1899.

Replications were filed to the pleas, and subsequently the
cause was removed to the Superior Court, where a trial was
had.   The jury found for the defendant, Lane, and judg-
ment was rendered on the verdict.

YOUNG, MAKEEL, BRADLEY & FRANK, attorneys for appellant.

NEWTON WYETH and O. H. McCONOUGHEY, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

There is no evidence sufficient to sustain the claim of appellee that there was any fraud or circumvention used to induce her to sign the note, or that Bowles or Myers made any representation to her that the note was other than a judgment note.

Appellee is a lawyer and can read, and she testified that the note was before her for five minutes before she signed it, but that nothing was said about a judgment note. The judgment note having been placed before her for examination, she being able to read, and having had about five minutes in which to read it, and nothing having been said, either by Bowles or Myers, to induce her to believe it was not a judgment note, and no device having been resorted to by either of them, so far as appears from the evidence, to procure her to sign it, the evidence fails to sustain her claim that her signature was induced by fraud. Bowles was not present at the time the note was signed. It appears from appellee's testimony that about a month before she signed the note, she had a conversation with Myers about giving a note, and it conclusively appears from her testimony that she intended to execute and knew she was executing a promissory note for $1,500.

The evidence as to the consideration for the note is conflicting. It appears from the evidence 'that there was a fund of some $6,000 in the hands of a third party, belonging to one Frederick L. Wood, whom appellee represented, and that there was a claim of an attorney against that fund, which could have been settled for about $1,000, and that appellee could not get possession of the fund until that claim was settled. Appellee testified that she executed the note to Bowles for him and Myers to negotiate. She testi-

fied as follows in reference to a conversation with Myers
just preceding her execution of the note:

"I said, ' I have had some conversation with Mr. Bowles.
and we have been speaking about adjusting Mr. Hirschl's
claim, and he thinks it can be done for a thousand dollars.
I will give you and Mr. Bowles $300;' and I said, ' I would
want $200 myself; that would make it $1,500.' He drew
up the note. I looked at it, and when I came to the place
where I was to sign it, I said, ' Well, I will want something
to show for this, a receipt; we will make it attorney's fee.
It is better to have a consideration for the note on
inquiry.' "

Myers then drew up the following receipt:

"$1,500.                    CHICAGO, Dec. 21st, 1897.
Received of Frances Lane, note for $1,500, for services in
the matter of Alonzo C. Wood estate."

Myers took it to Bowles, who signed it, and he, Myers,
brought it back to appellee, who testified that she signed
the note when she saw the receipt.

William A. Bowles, the payee, testified at considerable
length to services performed by him as attorney, at appel-
lee's request, in ascertaining what the interest of Frederick
L. Wood was in his deceased father's estate, and in examin-
ing a voluminous record, for the purpose of sustaining an
application to the governor of California for the pardon of
Frederick L. Wood, who was in the California penitentiary,
and in ascertaining why the fund of $6,000 could not be
paid over to Wood, etc. Albert T. Myers testified that the
consideration for the note was money which he had
advanced for appellee's board; for work he had done for
her; for office rent due him, and for legal services rendered
and to be rendered by Bowles.

Appellee's testimony that she told Myers that she would
allow him and Bowles $300 from the proceeds of the note,
her request for and taking a receipt specifying that the note
was for services of Bowles in the matter of the Alonzo C.
Wood estate, and the testimony of Bowles and Myers, here-
tofore mentioned, tend to prove that there was, at least,
some consideration for the note. Proof of a partial failure

of consideration does not support a plea of no consideration. (Wadhams v. Swan, 109 Ill. 46, 61.)   Other cases are to the same effect.

Appellant positively denied notice or knowledge of want of failure of consideration for the note.   Appellee relies on proof of circumstances which she claims were equivalent to notice.   The evidence tends to prove that appellant paid $1,250 for the note; $900 in money and $350 in a claim which he had against Myers.

Appellant's counsel complain of the giving of appellee's instructions 2, 3 and 4.   Instruction 2 informed the jury that "if the facts and circumstances in evidence were such as to have charged the plaintiff with notice, with such want of consideration, if none,   *   *   *   then the plaintiff is not a purchaser in good faith."   We think the instruction, in omitting the element of knowledge of the plaintiff of the facts and circumstances referred to, was calculated to mislead the jury.   Facts or circumstances unknown to appellant could not have the effect of charging him with notice.

Instructions 3 and 4 are as follows:

"3.   The court instructs the jury that if they believe from the evidence in this case that the defendant executed and delivered the note in question to Bowles and Myers, named in the evidence, or one of them, to be negotiated and sold, and the proceeds to be got for use of the defendant, and not to go as pay to said Bowles and for money alleged to have been advanced by said Myers, and that said Bowles and Myers diverted the note to other uses than those, if any, shown by the evidence was agreed to by the defendant and said Bowles and Myers, and that the defendant did not assent to or ratify such diversion of the note, if any shown, then said note was executed and delivered without consideration."

"4.   The court instructs the jury that the defense to the note in question, pleaded in the amended second plea of the defendant, refers to the procuring by fraud and circumvention a different instrument to be executed and delivered by the defendant from the instrument she alleges she agreed to, and understood she did execute, and if you find from the evidence that there were negotiations between the defend-

ant and the payee and one Myers leading up to the making of the note in question, and that induced the defendant to believe she was executing a promissory note for fifteen hundred dollars, to run ninety days, and not a note with power of attorney therein to confess judgment at any time after the making of the note, and for an additional amount for attorney's fees, and that the payee of the note and one Myers fraudulently deceived the defendant into executing and delivering the note in question instead of such promissory note without such power of attorney therein, then, if you so find from the evidence, you will find the note in question was procured to be executed by what was called fraud and circumvention, and such note, if so procured to be executed, is void and of no effect in the hands of the plaintiff, and plaintiff can not recover thereon against the defendant, whether he is a *bona fide* purchaser or not, provided you further believe from the evidence that the defendant used reasonable and ordinary care on her part in the executing and delivering of said note; and, in determining whether the defendant used reasonable and ordinary care in such case, the court instructs the jury that they are to take into consideration, so far as is shown by the evidence, if shown, the situation and surrounding of the defendant and the said payee and Myers, leading up to and at the time of the execution and delivery of the note, the relationship and association of the defendant and such payee and Myers in business as shown by the evidence, and whether the note was being given as payment or to be sold for her, and from all the evidence and circumstances in evidence in the case determine whether the defendant used reasonable and ordinary care; and the court further instructs you that ordinary and reasonable care means that degree of care which would ordinarily be expected from an ordinarily prudent person under the circumstances shown in the evidence surrounding the defendant at the time of the execution and delivery of the note in question."

On the hypothesis stated in instruction three, that the defendant executed and delivered the note to Bowles and Myers, or one of them, to be negotiated and sold, then the note was in the nature of accommodation paper, and want of consideration for the note would be no defense against an innocent purchaser of it, for value. Miller v. Larned, 103 Ill. 562.

In that case the court say:

" It is a reasonable rule that one who puts his note or bill in the hands of another to be sold or negotiated, after it is done will not be permitted to answer the holder, who has taken it in good faith for value, that he does not owe the note or bill."

Such purchaser in good faith for value would not be required to see to the application of the purchase money, and no misappropriation of it to which he was not a party could affect his rights. Instruction 3 is erroneous and should not have been given.

Instruction 4 should not have been given, there being no sufficient evidence on which to base the claim that appellee was induced by any misrepresentation or fraud of either Bowles or Myers to sign the note. "The fraud necessary to invalidate an instrument must be fraud in obtaining the execution of the instrument." Martina v. Muhlke, 186 Ill. 327, 330.

Appellee's main reliance, so far as appears from the evidence, is on her own negligence. She says the warrant of attorney was in fine print. Even if this were true, she could read it, and it can hardly be assumed, and is not claimed, that the form used for the note and warrant was prepared for the particular occasion. In her evidence she says: "I looked at it, and when I came to the place where I was to sign it, I said," etc. If she looked it over until she came to the place for signature, she must have seen the warrant. As printed in the abstract, the note proper occupies about five lines, while the warrant of attorney following next after the last word of the note and preceding appellee's signature, occupies over ten lines. It overtaxes one's credulity to be asked to believe that appellee, a lawyer and reader, could mistake a document of such length for an ordinary promissory note of a few lines. Appellee, if she did not read the warrant of attorney, having had ample opportunity so to do, was guilty of negligence, and, as between her and an innocent purchaser for value, she must suffer the consequences of her negligence.

In Anderson v. Warne, 71 Ill. 20, the court say:

" The note was written in English, and plaintiff in error

claims that neither he nor his wife, who were the only persons present except Bushner, could read it. The proof shows that his daughter, who was a member of his family, could read English. She was temporarily absent, only a half mile distant. He ought to have awaited her return, which would have been but a short time, and had the instrument read before he signed it, and it was negligence not to do so."

In Blake v. State Bank of Freeport, 178 Ill. 182, which was a motion by Blake to vacate a judgment by confession, the court say:

"He was fully on his guard, and refused to sign the first note drawn because it was due one day after date, but agreed to sign this note, and understood it, with the exception, as he claims, of the warrant of attorney. The alleged ground of fraud in respect to that is, that he had no glasses and his eyesight was poor, so that he could not read the warrant, which was in fine print, and that when the cashier read the note at his request he did not read it distinctly so that he was able to comprehend that the note was a judgment note. Without going into details, we are well satisfied with the conclusion of the Appellate Court that there was no fraud in the respect claimed."

The facts of the last case cited are fully stated in 78 Ill. App. 166.

Instruction 4 singles out certain facts and circumstances, which the jury should take into consideration, in determining whether appellee exercised ordinary care in executing the note, which were only some of the facts in evidence, and the special mention of which, without reference to other important facts, such as the ability of appellee to read, her opportunity to read, etc., was calculated to mislead the jury.

The judgment will be reversed and the cause remanded.