## Mary D. Sill v. Willard H. Pate et al.

### Gen. No. 13,220.

1. PROMISSORY NOTES—*indorsed in blank; what sufficient to pass title to.* Notes indorsed in blank pass from hand to hand by actual delivery, and their delivery transfers the title.

2. PROMISSORY NOTES—*secured by trust deed; when purchaser of, protected.* The purchaser of notes secured by a deed of trust, who acquires the same before maturity in good faith, for value, in the usual course of business and without notice of the rights of the real owner thereof, is protected.

3. DECREE—*who not affected by.* A person not a party to a case in which a decree has been rendered and who is in no wise in privity to such decree, is not affected thereby.

Bill in equity. Appeal from the Circuit Court of Cook County; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed April 18, 1907.

**Statement by the Court.** Appellant was complainant and appellees were defendants in the Circuit Court, and will be so referred to here. Complainant filed a bill against Willard H. Pate, Rebecca Pate and Hubert S. Cline, in which it is averred, in substance, that in the spring of the year 1902 complainant was about 76 years old and in bad health, and for a long time prior thereto had been unable to transact her own business, and Frank Weiss, in whose ability and honesty she had unlimited confidence, was her business manager and confidential adviser. She was the owner of a note for $2,500, of date October 26, 1895, payable three years from date, but extended five years longer, with four interest notes for $75 each, and a trust deed of premises known as 1001 Wilcox avenue, said notes and trust deed being executed by Mary A. Jones and Stephen B.

Jones.   Complainant delivered said notes and trust deed to
Weiss, who said he wanted them to enable him and Wm.
Freudenberg to look into the title to said premises.   Later,
on request of Weiss and Freudenberg, she let the latter take
possession of the notes and trust deed to collect one of the
interest notes from Jones to reimburse himself for $75, for
which complainant was indebted to him, he and Weiss caus-
ing her to believe that when he, Freudenberg, should have
collected the interest note first coming due, the trust deed
and the other interest notes and a judgment note which she
had executed to Freudenberg, would be returned to her.   In
a few days thereafter Freudenberg collected said interest
note from Jones and returned the same to him, and com-
plainant paid her judgment note to one Gemmill, who
claimed to have purchased it from Freudenberg, and com-
plainant became entitled to said Jones notes and trust deed.
Also, in the spring of 1902, complainant owned a note for
$2,000, dated May 11, 1901, payable in five years from date,
and nine interest notes for $60 each, and a trust deed to se-
cure the same of the premises of 701 N. Oakley avenue, all
executed by Charles M. Mueller.   In April, 1902, complain-
ant, by the advice of Weiss, delivered said notes and trust
deed to Freudenberg, to keep the same till he could collect
one of the interest notes to reimburse him for $60, which
complainant owed him; and Weiss and Freudenberg told
her that then the other notes and trust deed would be 're-
turned to her.   Freudenberg collected one of the interest
notes from Mueller, and she became entitled to said return.
Weiss and Freudenberg procured from complainant posses-
sion of all said notes and trust deeds to defraud complain-
ant, and the loan of $75 and $60 by Freudenberg to Weiss
was part of a conspiracy to deceive her into placing her
notes in their hands.

April 15, 1905, on a bill filed by complainant April 18,
1903, against Weiss and Freudenberg, a decree was entered
that Weiss, who had run away and was served by publica-
tion, pay to her $10,641.64, and that Freudenberg pay to
her $3,386.45, or deliver to her said Jones and Mueller

notes, which decree remains in force and wholly unsatisfied. On the hearing of said cause, it first became known to complainant that Willard H. Pate claimed to have possession for his mother, Rebecca Pate, of the Jones note for $2,500 and two of the $75 interest notes and the trust deed to secure the same, and that he first took them to secure a loan of $1,600 and later purchased them, which claims are untrue, etc. Complainant made no such loan, nor had she any dealings whatever with said Pates, or either of them. Complainant avers, on information and belief, that Willard H. Pate did not, for himself or his mother, advance to Freudenberg, on complainant's account, any money for which he took said Jones notes, nor did he or his mother acquire possession of the same in good faith and without notice of complainant's title, or for value, and said Willard Pate, in obtaining possession of said notes, was conspiring with Freudenberg to get possession of the same without paying anything for them, and that he used the name Rebecca Pate merely as a blind, and had reason to know and did know of complainant's mental and bodily condition, her unlimited confidence in Weiss, and her habit of signing any papers Weiss wanted her to sign, and of trusting him, and her inability to manage her own affairs.

Weiss and Freudenberg defrauded complainant by getting said notes from her, etc., and Willard H. Pate, through Weiss and Freudenberg, fraudulently procured complainant, who was acting under Weiss' advice, to sign and acknowledge papers, one of which she is informed was a promissory note for $1,600, attached to which was an agreement designed to deprive complainant of said Jones notes, the effect of which she did not understand, but was told by Weiss it was a mere matter of form, etc. On the hearing of the cause of complainant against Weiss and Freudenberg, complainant knew, for the first time, that Hubert S. Cline claimed possession, as purchaser from complainant, of the Mueller notes. Instead of returning the Mueller notes to complainant, Freudenberg and W. H. Pate fraudulently delivered them to Cline. Cline did not obtain said notes in

good faith, or without notice of complainant's title, or for
value, or in the usual course of business, and had reason to
know, etc.    Here are the same averments as in the Pate
case.    By collusion with Freudenberg a check was passed
for $2,000, and was paid to Freudenberg for form's sake;
but Cline did not part with that sum permanently, and no
money was, in fact, paid to Freudenberg by Cline, or to
complainant.    Complainant is informed and believes that,
induced thereto by Weiss, she signed a note for $1,300 to
Freudenberg, as payee, with an agreement attached, author-
izing him to keep said Mueller notes and trust deed as se-
curity for said $1,300 note, etc.    March 11, 1905, Rebecca
Pate commenced suit against the Joneses to foreclose the
trust deed executed by them, etc.    The prayer prays that
the defendants answer, without oath, and that the notes and
trust deeds may be delivered up, etc., and for general re-
lief.

The defendants answered, replications were filed, the cause
was heard on depositions and the oral testimony of wit-
nesses given, and documentary evidence produced in open
court, and the court dismissed the bill for want of equity.
It appears that the only reason for making Rebecca Pate
a defendant was, that Willard H. Pate, her son, claimed
that he purchased the Jones notes with his mother's money,
and that Rebecca, as is alleged, had filed a bill for fore-
closure.

HENRY C. ADAMS, for appellant; DEWITT C. JONES, of
counsel.

W. T. UNDERWOOD and JAMES MAHER, for appellees.

MR. JUSTICE ADAMS delivered the opinion of the court.

Mary D. Sill, at the time of the transactions in question,
was about seventy-six years of age, and had resided in Chi-
cago about fifteen years.    In her testimony she says:    "As
a general thing I am pretty well, but occasionally sick."
Before she became acquainted with the defendant Weiss she

had employed several persons successively to assist her in the management of her property. She says: "I first had Mr. Campbell, then Mr. Bridge, then Mr. Adams, then Mr. Weiss." In the year 1891 she became acquainted with Frank Weiss, who was engaged in the real estate business as a broker. At that time complainant was desirous of buying a house and lot, and Weiss showed her different lots, which he had for sale. Finally she came to have the most implicit confidence in Weiss' business capacity and integrity. He was her business manager and confidential adviser, and in matters of business she did nothing without his advice. She relied on him entirely and signed all papers which he asked her to sign. Complainant owned a promissory note of date October 26, 1895, for the sum of $2,500, payable three years after date, with interest at the rate of 6 per cent per annum, payable semi-annually, and evidenced by interest notes or coupons, the principal and interest notes made by Mary A. Jones and Stephen B. Jones, payable to their order, and indorsed by them in blank. By written agreement between complainant and the makers of the notes, the time of payment of the principal note was extended five years from October 26, 1898. Payment of this note was secured by trust deed of real property in the city of Chicago. Complainant also owned a promissory note of Charles M. Mueller, of date May 11, 1901, for the sum of $2,000, with interest at the rate of 6 per cent per annum, payable semi-annually, payable to the order of Mary D. Sill five years after date, and by her indorsed in blank. This note was also secured by trust deed of real property situated in the city of Chicago. Weiss introduced complainant to Freudenberg, a real estate and loan broker, and the notes and trust deeds were turned over to Freudenberg, the notes being indorsed in blank, as heretofore stated, and also, the following papers: a document dated February 5, 1902, addressed to Wm. Freudenberg, and signed by complainant, authorizing Freudenberg to negotiate for her a loan of $1,600, and to pay the proceeds of the loan to the defendant Weiss, after deducting therefrom certain items,

amounting in all to $102. Following complainant's signature to the document. is the following: "Received of Wm. Freudenberg the above amount less expenses mentioned. Chicago, Feb. 13th, 1902. Frank Weiss"; a promissory note dated February 5, 1902, signed by complainant, for the sum of $1,600, payable to the order of W. H. Pate, with interest at 6 per cent per annum. Following the note proper, it is recited that there is deposited with Pate, as collateral security the trust deed executed by the Joneses to secure their $2,500 note, describing the premises conveyed by the trust deed; also an extension agreement extending the time of payment of the Jones note, for $2,500 and interest, five years from October 26, 1898, or till October 26, 1903. Also a document dated April 23, 1902, signed "Mary D. Sill," addressed to Wm. Freudenberg, authorizing him to negotiate for complainant a loan of $1,300, and to pay the proceeds thereof to Frank Weiss, less certain items amounting in all to $77.50. Next after complainant's signature to the document is the following: "Received the above amount this 26th day of April, 1902. Frank Weiss."

It appears from the evidence that Freudenberg made the $1,300 loan himself, borrowing the money, so that it is not involved. The charge against the defendants is that the defendants obtained the possession of the notes and trust deeds fraudulently and by collusion with Weiss and Freudenberg, and not in good faith, or for value, or without notice of complainant's rights in the premises, and the question to be decided is, whether the evidence sustains these charges. We will first consider the evidence as to the Jones note for $2,500 and interest.

The evidence both of the complainant and Willard H. Pate is, that complainant and Pate were not acquainted and had no dealings personally, and that they first saw each other on the hearing of Sill v. Freudenberg and Weiss, which occurred long after the transactions in question, and the defendants, both in their answers and their testimony, deny all knowledge of the transactions between complainant and Weiss and Freudenberg averred in the bill. The de-

fendant Pate is secretary of the Woolf Clothing Co. and knew Freudenberg as a real estate and loan broker, who had done business for his father and mother and himself, and in whom he had unlimited confidence, and believed he was all right. His first connection with the Jones note and trust deed was the lending $1,600 on complainant's note for that amount, and taking the Jones note and trust deed as collateral security. The evidence shows that he gave a check dated February 11, 1902, for $1,580, payable to Wm. Freudenberg, for the note, which check was produced on the trial, and showed that it went through the clearing house and was paid. He states, as the reason that the check was not for $1,600, that Freudenberg owed him $20. Subsequently, about August, 1902, the $1,600 note not yet having been paid, Freudenberg offered to sell him the Jones note, which, with the trust deed to secure it, he held as security for payment of the $1,580 note, and he purchased the Jones note and trust deed, giving for it the $1,580 note and $847.05 in money. He explains that the difference between the amount of the payments he made and $2,500 was the interest and commission. The complainant's note for the $1,600 loan is in the record cancelled. Freudenberg testified that he did not think the $1,600 note was paid until Pate bought the paper outright, that it was returned to him when Pate paid the balance in money, which was when he purchased the Jones notes outright. This evidence is uncontradicted. There were some interest notes unpaid when Pate purchased. At the time of the loan Pate saw the note indorsed in blank by the Joneses, to whose order it was payable, the extension agreement and the trust deed, and retained the Jones note and trust deed in his possession till he purchased the note and trust deed as stated. Hubert S. Cline, defendant, heard from W. H. Pate that Freudenberg had the Mueller note for $2,000 and the trust deed for sale, and purchased them in the latter part of May, 1902, paying a bank certificate of deposit for $1,945 and $55 in money. Freudenberg was authorized to sell the

note by the following document, signed by the complainant:

"Chicago, May 26, 1902.

Mr. Wm. Freudenberg.

Dear Sir: I hereby authorize you to negotiate for me the sale of a Two Thousand $2000.00 Note Secured by Trust Deed on the following described property Lot 13 Block 11 in Watson, Tower & Davis Subdivision of the West half (W ½) of the North West quarter N W ¼ of Section six 6 Township 39, North, Range 14 East of the third P. M. also known as number 701 North Oakley Ave. Signed by Chas. M. Mueller, bearing interest at the rate of six per cent per annum. I hereby agree to pay you 2½ per cent as commission on such sale; you will also deduct $1300 from said amount which I have already received.

MARY D. SILL.     (Seal.)"

A sworn copy of the following document, the original having been lost, was introduced in evidence: "Mr. Freudenberg. Please hand Mr. Frank Weiss the money due me on mortgages sold by you, signed Charles M. Mueller and Susan A. Jones. Mary D. Sill."

The Jones trust deed is signed by Mary A. Jones and Stephen B. Jones, and "Susan," in the foregoing document, seems to be an error, and that Mary was intended. The evidence shows no trust deed signed Jones except that signed Mary A. Jones and Stephen B. Jones.

Freudenberg testified that he paid the money which he received on the sale of the Jones and Mueller notes, to Frank Weiss, according to directions. Notes indorsed in blank, as were the notes in question, pass from hand to hand by mere delivery, and their delivery transfers the title. Palmer v. Nassau Bank, 78 Ill., 380; Morris v. Preston, 93 ib., 215. In the last case the agent was entrusted with notes indorsed in blank, by the owner of the notes, to collect interest on them, and to sell them. He pledged the notes for his own benefit, in respect to which the court says: "Appellant, when she placed the notes thus indorsed in the hands of Durham, thereby empowered him to sell and pass

the title, however much he may have disregarded his duty or her instructions.   Nor would the purchaser be required to see that he paid to her the proceeds, nor could he, when he was wholly uninformed of her rights or that she had any, even the slightest claim.   She had invested Durham with what appeared to the commercial world an absolute title, with nothing to excite suspicion or to demand inquiry. Having done so, and he having abused his trust by pledging the notes for his own purposes in disregard of her rights, she must suffer the loss.   He had the power, by being thus invested with evidence of title, to deal with the paper with all persons not having notice precisely as though it was his own, and appellant can not look to appellees to make good the loss occasioned by his bad faith or the abuse of trust by her agent."

In this case it is admitted by the complainant that, by the advice of Weiss, she put Freudenberg in possession of the notes and trust deeds, so that he had in his possession all the *indicia* of title, and it further appears that she expressly authorized the sale of the Mueller note, and recognized the sale of both it and the Jones note, by directing the proceeds of the sales to be paid to Weiss, whom she had selected as her business manager and confidential adviser, and in whom she says she had such implicit confidence that she signed, without reading, any document or paper which he requested her to sign.   The evidence shows that she was fairly educated and could read, and that she did not read documents which she signed cannot avail her, so far as the rights of the defendants are concerned, and who, as the evidence shows, purchased the notes before maturity, in good faith, for value, in the usual course of business, and without notice of her rights in the premises.   Anderson v. Warne, 71 Ill., 26; Yeomans v. Lane, 101 Ill. App., 228.

Complainant testified: "I know that Freudenberg had the notes.   I don't know that any one was present, unless it was Mr. Weiss.   Mr. Weiss was present.   What Freudenberg said made very little impression.   I knew he had my notes.   I did not ask him what he was going to do with

them.  I knew they were notes which Mr. Weiss said had
been corrected; at least the original document had been cor-
rected, and I was surprised that I had so many to sign.  I
did not understand it.  I did not look at the papers; I saw
them, but I did not read them."  In another place she says,
referring to Weiss, "My memory is poor; I generally signed
papers that he asked me to sign."  It can hardly be doubted
that Weiss asked her to sign papers which redounded, as the
evidence shows, to his benefit.  Appellant's counsel offered
in evidence a bill filed at the May term, 1903, of the Cir-
cuit Court, sworn to April 17, 1903, in the case of Mary D.
Sill v. William Freudenberg and Frank Weiss, and a decree
entered in said cause April 15, 1905.  The court admitted
the bill in evidence, but excluded the decree.  Counsel for
complainant contend that the exclusion of the decree was
error, and argue that the defendants in the present case are
bound by the decree.  The bill is solely against Weiss and
Freudenberg, and so also is the decree.  The purchases of
the notes, etc., by the Pates, defendants, and Cline, occurred
long before the bill was filed, and therefore their rights are
not, in the least, affected by the decree.  They are not in
privity with the decree.  24 Am. & Eng. Ency. of Law,
746-7, and cases cited; Seymour v. Wallace, 12 Mich., 402;
Hart v. Moulton, 104 Wis., 349; Dull v. Blackman, 169 U.
S., 243; Bradley v. Luce, 99 Ill., 234, 245; 1 Freeman on
Judgments, 4th ed., section 162; 2 Black on Judgments,
section 549.

The cause was heard on the pleadings, the depositions of
two witnesses, and the testimony of six witnesses given, and
documents produced in open court.  In such case the decree,
to warrant a reversal, must be clearly and palpably contrary
to the evidence.  Dowie v. Driscoll, 203 Ill., 480, 488, and
cases cited.  In the present case the material allegations of
the bill, that the defendants colluded with Weiss and Freu-
denberg to defraud the complainant, and that they did not
purchase the notes in question for value, and without notice
of complainant's rights, or in the usual course of business,
were not only not proved by complainant, on whom the bur-

den of proof was (Matson v. Alley, 141 Ill., 284, 287), but were disproved by the defendants, and had the decree been for the complainant, it could not be sustained.

The decree will be affirmed.

*Affirmed.*