DENNIS V. CONNOLLY, Admr., Appellee, vs. HEINRICH DAMMANN et al. Appellants.

*Opinion filed December 17, 1907—Rehearing denied Feb. 7, 1908.*

1. RES JUDICATA—*when decree in a chancery case is no defense to judgment by confession on note.* A decree dismissing, for want of equity, a bill filed by a second mortgagee to enforce a defective decree in her favor for the amount of the mortgage indebtedness does not bar the right of such second mortgagee, as an innocent purchaser, before maturity, to a subsequent judgment by confession upon the note.

2. BILLS AND NOTES—*when alleged fraud is no defense to note.* The fraud and circumvention necessary to invalidate a note in the hands of an innocent purchaser before maturity must relate to the execution of the note, and not merely to the consideration therefor.

3. SAME—*what does not amount to fraud in execution of note.* That the makers of a note and mortgage trusted the payee, to whom they were indebted in some amount as back payments on mortgaged premises, to prepare the papers and make settlement; that he represented to them that he wished to fix up the title and that it would be necessary for them to sign papers; that they were foreigners and could not read or write English or compute their previous payments, interest, etc., and that they did not understand the papers were a note and mortgage, does not amount to fraud in the *execution* of the note where the payee made no false statements of fact.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

About January 1, 1890, Jacob Nier entered into a written contract for the sale of certain real estate in Mason's addition to Ottawa to Heinrich Dammann for $1500, to be paid by assuming a mortgage thereon of $500 to Agatha Becker and by paying $100 in May, 1891, and $900 in five years, in monthly payments of varying amounts. On August 1, 1894, Thomas E. MacKinlay, having obtained Nier's title to the premises, conveyed them to Heinrich Dammann

and Dora Dammann, his wife, and the grantees gave Mac-Kinlay a judgment note for $900, due five years after date, secured by a second mortgage on the premises, the first being that of Agatha Becker. The note and mortgage for $900 were subsequently endorsed to Catharine Connolly.

In 1897 Agatha Becker filed her bill in the circuit court of LaSalle county to foreclose her first mortgage, making MacKinlay and wife, Catharine Connolly, and Heinrich Dammann and wife, parties defendant. Neither the Dammanns nor Catharine Connolly answered the bill, but the master reported the amount due on the note and second mortgage for $900, and a decree was rendered requiring the Dammanns to pay Agatha Becker $571.07 and Catharine Connolly $1102 within five days, and directing the master, in default thereof, to sell the mortgaged premises and pay the costs and then pay Agatha Becker the amount due her, and if there was any remainder after the making of these payments, to pay the balance to Catharine Connolly to the extent of the amount due her. The premises sold for only enough to pay Agatha Becker, and she afterwards obtained a master's deed for the premises. Nothing was paid Catharine Connolly and no deficiency decree was entered in her favor.

On December 29, 1903, Catharine Connolly filed a bill in the circuit court of LaSalle county against the Dammanns, setting up the foregoing facts, including all the proceedings in the foreclosure suit, and praying that a decree be rendered supplemental to the decree in the foreclosure suit, and that it be made and recorded as a judgment at law against the Dammanns and that complainant have execution thereof. The Dammanns answered the bill, denying that Catharine Connolly filed any answer or cross-bill or that the court had any authority to enter any decree in regard to said second mortgage. Their answer also set up all their transactions with MacKinlay, and alleged the payment of various sums to him before the note was given;

that there was but a small amount due from them to him when they gave the note, and they were not indebted thereon to any large amount, if at all. Catharine Connolly died during the pendency of the suit, and Dennis V. Connolly, her administrator, was substituted as complainant. On October 10, 1906, a decree was rendered dismissing the bill for want of equity. The administrator prayed an appeal, which he did not perfect, but on December 12, 1906, caused to be entered in the circuit court of LaSalle county a judgment by confession for $1686 on the $900 note of August 1, 1894. Heinrich Dammann and wife entered a motion to open up the judgment and for leave to plead, and presented their affidavit concerning the transactions between them and MacKinlay. They also offered the record of the chancery case prosecuted by Catharine Connolly. The motion to open up the judgment was denied and an appeal was prosecuted to the Appellate Court for the Second District, where the judgment was affirmed, and a further appeal is now prosecuted to this court.

I. I. HANNA, and LESTER H. STRAWN, for appellants.

D. B. SNOW, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Appellants contend that the decree in the chancery case is a bar to the present action. It does not, however, show any defense. No plea of *res judicata* could be based on that record. It does not in any way affect the position, in a court of law, of Catharine Connolly as an innocent purchaser of the note sued on. The mortgage and note in the hands of Mrs. Connolly were subject, in equity, to the same defenses as in the hands of MacKinlay. When the bill was filed, in 1903, to carry into execution the defective decree of 1897, it is said that it was competent for the court to look into the decree and see if it was equitable and just, and if

зз 2—1 2

it was not, to refuse its enforcement, referring to *Wadhams*
v. *Gay*, 73 Ill. 415, and *Teel* v. *Dunnihoo*, 230 id. 476. Since
Mrs. Connolly could not, in equity, avail herself of her
position as an innocent purchaser, a court of equity, on the
showing made, might well find the decree inequitable, refuse
to lend its aid to the enforcement of it and dismiss for want
of equity the bill filed for that purpose. But this does not
in any way affect her right in a suit on the note in a court
of law. No issue as to her being an innocent purchaser was
raised in the suit to obtain execution of the decree, and in
a court of equity that question was immaterial. The court
did not, therefore, determine the question. But the present
is an action at law. That question is now vital. In the
showing made upon their motion, appellants did not attempt
to question that appellee's intestate was an innocent pur-
chaser for value before maturity, and the decree therefore
did not affect her rights in a court of law.

The affidavit of appellants shows no defense to the note.
The endorsement of the payee to Mrs. Connolly was made
before its maturity. There is no statement charging Mrs.
Connolly with notice of any of the circumstances attending
the giving of the note or of any fact tending to show any
defense to it. The facts do not show that the execution of
the note was procured by fraud and circumvention. The
fraud and misrepresentation go only to the consideration
and not to the execution of the instrument. The appellants
state in their affidavit that their signatures were procured
by the fraud and misrepresentation of MacKinlay; that
they were Germans, and could not at that time read or
write English and understood and spoke it very imper-
fectly; that they could not compute interest and accepted
MacKinlay's computation; that they had paid the $100 due
in May, 1891, and $25 additional, and the monthly pay-
ments as they became due; "that in the summer of 1894
MacKinlay came to said premises, then occupied by depo-
nents as their home, with a notary public, and said he was

going to leave Ottawa and he wished to fix up the title before he left, and that it would be necessary for them to sign papers, the nature of which they did not understand; that at first they refused to sign any papers, whereupon they were asked by MacKinlay, in a threatening tone, whether they wanted the title to their home, and, thinking that it was necessary to sign the papers in order to get the title to their home, they signed the same, not knowing or believing that they were signing a note or mortgage, but defendants are now informed and believe that the papers so signed by them were the note for $900, on which this suit is brought, and a mortgage securing the same; that if they had known the nature of said papers they would not have signed them; that they were deceived, and were made to believe that said papers were acknowledgments of their title and that they must sign the same to get their title; that they did not understand land titles and trusted MacKinlay to make them secure in the ownership of their homestead; that MacKinlay was a lawyer; that they were not informed that either of said papers contained a power of attorney to confess judgment, and would not have understood what it meant unless the matter had been fully explained to them in detail."

All these allegations show only that appellants trusted MacKinlay and permitted him to make their settlement according to his judgment. While they say that they did not know they were signing a note and mortgage and were deceived and made to believe the papers were acknowledgments of their title which they must sign to get their title, they do not say that any such statement was made to them by MacKinlay, or that any statement was made by him except that he said he was going to leave Ottawa and wished to fix up the title before he left and that it would be necessary for them to sign papers, and upon their refusing he asked, in a threatening tone, whether they wanted the title to their home. The fraud and circumvention necessary to

invalidate a note in the hands of an innocent purchaser must be fraud in the execution of the instrument. (*Martina* v. *Muhlke,* 186 Ill. 327.) Here the appellants voluntarily executed the note and mortgage and the latter was afterwards properly acknowledged. They were indebted in some amount to MacKinlay, as they knew, for the period of their monthly payments had not expired. They may have signed the papers without knowing what they were and without due care, but they do not say that MacKinlay said the papers were different from what they actually were or that he made any false statement of fact to appellants.

No defense to the notes having been shown, the order of the circuit court was right, and the judgment of the Appellate Court affirming it will be affirmed.

*Judgment affirmed.*