**Lillie B. Murray, Appellee, v. Metropolitan Trust & Savings Bank, Appellant.**

**Gen. No. 15,413.**

1. NEGOTIABLE INSTRUMENTS—*effect of want of consideration.* Notes, if genuine, are good against the maker in the hands of an innocent purchaser for value (and this although the failure of consideration is fatal to the security), unless they are rendered void in such hands by falling under the provisions of section 10 of the Act of March 18, 1874, revising the law in relation to negotiable paper.

2. NEGOTIABLE INSTRUMENTS—*fraud in consideration as defense against innocent holder.* Strict construction is given to the defense of fraud where interposed as against an innocent holder. Fraud in relation to the consideration merely will not invalidate negotiable paper in such hands.

3. NEGOTIABLE INSTRUMENTS—*when fraud in consideration not a defense as against innocent holder.* Reasonable care must be exercised by the maker in the transaction which results in the note, or the defense of fraud and circumvention is not allowed him as against an innocent holder.

4. NEGOTIABLE INSTRUMENTS—*when equity should not take jurisdiction of fraud in consideration as against innocent holder.* In this proceeding to foreclose a trust deed securing notes which were in the hands of the complainant as an innocent holder, it is nót obligatory upon, nor desirable or proper that a court of equity should determine the question as to whether the notes in question were void because of fraud in the consideration, the defense of want of consideration being established and being sufficient to determine and settle the pending proceeding.

Bill in chancery. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the March term, 1909. Decree modified and affirmed. Opinion filed January 23, 1911.

**Statement by the Court.** This is an appeal from certain portions of a decree in equity of the Circuit Court, entered December 14, 1898. The decree was entered in a suit by bill in chancery of Lillie B. Murray v. The Metropolitan Trust & Savings Bank, William Anderson and others, in which suit there was also a cross-bill of William Anderson v. Lillie B. Murray and others, and a cross-bill of The Metropolitan Trust & Savings Bank v. Lillie B. Murray and others, both of which cross-bills were also disposed of by the decree.

The original bill prayed that William Anderson and The Metropolitan Trust & Savings Bank might each be enjoined from proceeding by foreclosure, or otherwise, against the complainant Murray on either of two principal notes (each with one interest coupon outstanding), each purporting to be secured by a trust deed on certain real estate in Chicago belonging to said Murray, until such time as the court might ascertain the rightful owner of the lien on the premises, which the complainant alleged only existed by virtue of one of said sets of notes and the trust deed securing the same. The bill prayed that the court should declare one or the other set of notes void, and require the party who might hold the same to cancel them.

One of the said principal notes was for $2,500 and signed by Mary J. Howes. It was dated June 27, 1898,

and was originally due by its terms on June 27, 1903. Connected with it was an "extension interest note" for $68.75 signed by Lillie B. Murray and husband. These notes were owned by William Anderson. The other principal note was for $2,500 and was dated June 27, 1903, and was signed by Lillie B. Murray and husband, with an interest coupon of $68.75, also signed by them, attached. These notes were held by the Metropolitan Trust & Savings Bank.

Each of these principal notes and interest purported to be secured by a trust deed of the real estate in question; the Anderson note by a trust deed dated June 27, 1898, signed by one Mary J. Howes, of whom Lillie B. Murray had purchased the property in 1900, then assuming as a part of the purchase price the Anderson indebtedness. The Metropolitan Trust & Savings Bank note and interest purported to be secured by a trust deed of the date of June 27, 1903, signed by Lillie B. Murray and husband, and describing the note and interest coupon (and other like interest coupons) held by said Bank.

The bill alleged that one Lewis acted as the agent of Mary A. Howes when Mrs. Murray purchased the property, and appeared to act as the agent of the holder of the Howes note and trust deed, and that after the purchase and assumption by Mrs. Murray of the Howes indebtedness she paid the interest on the notes at Lewis' office and received from him the interest coupon notes. It also alleges that when the Howes note became due by its terms in June, 1903, she applied to Lewis for an extension of said loan on the property for three years, and Lewis told her that the extension could be made and that he would prepare the papers; that the said Lewis did prepare certain papers and informed her that said papers were intended to and formed a part of the papers required in making the extension, and that whatever papers she signed she supposed to be only the papers required to be signed by her in order to effect the extension of the said loan,

476    APPELLATE COURTS OF ILLINOIS.

Murray v. Metropolitan Trust & Savings Bank, 159 Ill. App. 473.

and that she did sign certain interest notes, each for $68.75, with the intention of securing the future interest upon the principal note of $2,500, which was still a lien on said premises. Of these she had paid and received canceled all but one; that at the time of the maturity of the indebtednesss as extended she first learned of the existence and ownership of the two sets of notes above described, and that she filed the bill for the purpose of ascertaining which of the parties claiming to hold a lien on her property was actually entitled to such a lien.

William Anderson and The Metropolitan Trust & Savings Bank respectively answered and each filed a cross-bill.

The record is by *praecipe* and the answer and cross-bill of William Anderson do not appear, but the recitals of the first decree in the cause show that the cross-bill prayed the foreclosure of the Howes trust deed. The Metropolitan Trust & Savings Bank answered on information and belief that Lillie B. Murray executed the note and trust deed held by the Bank for the purpose of evidencing the indebtedness of $2,500 which she had assumed in the purchase from Mary J. Howes and retiring the trust deed and notes which had been made by Mary J. Howes on June 27, 1898, and that the Bank was a *bona fide* holder for value of the notes and trust deed held by it. The cross-bill of The Metropolitan Trust & Savings Bank alleges the due execution and delivery by Lillie B. Murray of the note, and by Lillie B. Murray and her husband of the trust deed held by the Bank, and that the Bank became the owner and legal holder of said notes and trust deed before the maturity thereof. It prays the foreclosure thereof by decree of the court. The cross-bills were answered by Lillie B. Murray and the other respective defendants, and the whole cause (original bill and cross-bills) was referred to a master in chancery of the Circuit Court. The master took testimony and reported his conclusions to the court, the essence

of which was that the William Anderson note and trust deed constituted a valid lien against the premises in question and should be foreclosed; that Lillie B. Murray executed the papers held by The Metropolitan Trust & Savings Bank, but that the same were executed without any consideration, and that consequently the trust deed was null and void and should be cancelled. Further, that Lewis procured the signing of all the papers held by the Bank surreptitiously and fraudulently and without the knowledge and consent of Lillie B. Murray, and that therefore the note and coupon interest note held by the Bank were so tainted with fraud that the bank could not enforce them. The master therefore recommended a decree ordering a foreclosure under the Anderson trust deed, and ordering further that the trust deed held by The Metropolitan Trust & Savings Bank should be held a cloud on the complainant Murray's title, to be delivered up for cancellation and release, and that the note and interest coupon held by the Bank should also be delivered up to be cancelled.

To this report the Metropolitan Trust & Savings Bank filed objections, which were afterward allowed to stand as exceptions. They complained of the finding in the report that the notes and trust deed held by it were executed by Lillie B. Murray without consideration and that consequently the said trust deed was null and void and should be cancelled; and of the findings that the said Murray did not know she had signed said notes and trust deed, and that Lewis procured the signing of them surreptitiously and fraudulently; and of the findings that the said notes were so tainted with fraud that the Bank could not enforce them; and complained also of the recommendation that the trust deed should be decreed to be a cloud on Murray's title, to be delivered up for cancellation, and that the notes should be also delivered up to be cancelled. Further the Bank claimed that the master should have found that the cross-complainant, The Metropolitan Trust and Sav-

478     APPELLATE COURTS OF ILLINOIS.

Murray v. Metropolitan Trust & Savings Bank, 159 Ill. App. 473.

ings Bank, was entitled to a decree or judgment against said Murray as in a proceeding at law for the amount advanced as an innocent purchaser of said notes on the same.

The Circuit Court on hearing overruled the said exceptions to the master's report and confirmed the same, adopting his recommendations. The findings of the decree follow those of the master. It provided for the foreclosure of the Anderson trust deed and found that the notes, as well as the trust deed held by the Bank, were executed without consideration and consequently the trust deed should be cancelled. Further, it found that "Lillie B. Murray went to the office of Lewis on June 27, 1903, for the purpose of executing the extension agreement and the interest coupon notes bearing that date held by William Anderson, and not for the purpose of executing said principal and coupon interest notes now held by said Metropolitan Trust and Savings Bank; that she was not requested to sign said last mentioned principal and interest notes in their true meaning and did not wittingly sign the same, and did not know that she had done so; that no consideration passed to her at the time she signed these last mentioned principal and interest notes, except the extension of the loan on the Anderson papers; that Oscar A. Lewis procured the signing of said last mentioned principal notes surreptitiously and fraudulently for the purpose of defrauding the said Lillie B. Murray, and without her knowledge or consent and without consideration to her, and that she thought she was signing the papers for the Anderson extension only, and was induced to sign the said Metropolitan Bank papers with that belief."

As the complement of this finding the decree declared the note and interest coupon in question null and void, and ordered the said bank to deliver them up to said Lillie B. Murray for cancellation and to be perpetually enjoined from selling, transferring, using or disposing

of the same. The cross-bill of The Metropolitan Bank was by the decree dismissed with costs.

The Metropolitan Trust & Savings Bank prayed for and was allowed an appeal to this court from that portion of said decree overruling the exceptions of said Metropolitan Trust & Savings Bank to the master's report, and from that portion of the decree which finds that the said Lillie B. Murray executed the trust deed dated June 27, 1903, and the principal note for $2,500 of that date, and the interest coupons, without any consideration, and decrees that the said trust deed is null and void, and that the same should be cancelled and released, and from that portion of the decree which finds that the said principal note for $2,500, bearing date of June 27, 1903, and owned by The Metropolitan Trust & Savings Bank, was unwittingly signed by the said Lillie B. Murray, that she did not know that she signed the same, and that no consideration passed to her at the time of the execution thereof, and that the signing thereof was procured surreptitiously and fraudulently for the purpose of defrauding the said Lillie B. Murray and without her knowledge and consent; and from that portion of the decree finding that the said principal note for $2,500 dated June 27, 1903, and held by said Metropolitan Trust & Savings Bank is null and void and of no force and effect, and ordering that the same be delivered up by the said Metropolitan Trust & Savings Bank to the said Lillie B. Murray for cancellation.

In the assignments of error in this court the appellant also claims that the court below erred in that it did not enter a decree in favor of the Metropolitan Trust and Savings Bank for the amount due on the principal note and interest coupons introduced in evidence on behalf of said Metropolitan Trust and Savings Bank, and its counsel argues in favor of the same proposition.

HORTON & MILLER, for appellant.

J. HENRY KRAFT, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The full statement prefixed to this opinion shows that no question is made in this appeal concerning that portion of the decree in this cause which holds valid the Howes note for $2,500 (with its accompanying coupon) owned by Anderson and orders the foreclosure of the appellant's property on the same. The decree was plainly right in this respect and is not appealed from.

We think it was also right under the evidence, in those findings which *are* appealed from, that declare that Lillie B. Murray executed the trust deed dated June 27, 1903, and the note for $2,500 of that date, with its accompanying interest coupons, without any consideration (if it be assumed that she executed them at all), and that the said trust deed is consequently null and void and should be cancelled and released, and also right therefore in ordering the cross-bill of the appellant dismissed with costs.

But the decree goes further. Although the appellant, The Metropolitan Trust & Savings Bank, is a holder for value and presumably an innocent holder of the note and coupon in question, the decree, after finding that Lillie B. Murray did actually execute them, orders that they be held null and void and be delivered up by the appellant Bank to said Lillie B. Murray for cancellation. This order is based on the findings quoted at length in the statement prefixed to this opinion. It is not necessary to discuss whether these findings in themselves can be construed as sufficient to support the order of which they form the basis, because if a construction be given them which would make them so sufficient, they are unsupported by the evidence.

It is clear that although executed without consideration these notes, if genuine, are good against the maker in the hands of an innocent purchaser for value (and this although the failure of consideration is fatal to the

security), unless they are rendered void in such hands by falling under the provisions of section 10 of the Act of March 18, 1874, revising the law in relation to negotiable paper, which section re-enacted an already existing provision of the statutes of Illinois dating at least from 1827. The provision is: "If any fraud or circumvention be used in obtaining the making or executing of any of the instruments aforesaid, such fraud or circumvention may be pleaded in bar to any action to be brought on any such instrument so obtained, whether such action be brought by the party committing such fraud or circumvention or by any assignee of such instrument."

To sustain the usefulness of negotiable instruments, so important in the commercial world, the Supreme Court of Illinois, early adopted and has constantly held to a strict construction of the defense thus given against innocent holders of notes originally tainted with fraud. It held in Woods v. Hynes, 1 Scam. 103, in 1833, that fraud in relation to the consideration or to the contract would not be such a defense, and repeated the holding in Mulford v. Shepard, 1 Scam. 583.

In Latham v. Smith, 45 Ill. 25, the court held that misrepresentations relating to the legal effect of an instrument and not to its form or character, were not a sufficient ground of defense, and that if the maker of the note involved could read, the presumption must be indulged that he read it before he attached his signature to it. In Shipley v. Carroll, 45 Ill. 285, the maker of a note was held to be liable to an innocent holder for value, although the possession of it after it was made was secured by "stealth which no doubt embraced fraud."

In Elliott v. Levings, 54 Ill. 213, it was held that a maker would be liable who did not know he was signing such a note as actually was made, but thought it was only to be paid on a contingency, which did not occur.

In Clarke v. Johnson, 54 Ill. 296, it was held that

the stealing of a note from the maker after it was made and before it was delivered, would not prevent its being good in the hands of an innocent holder for value. And to the same general purport are numerous other cases, such as Adams v. Wooldridge, 3 Scam. 255; Easter v. Minard, 26 Ill. 495, and Martina v. Muhlke, 186 Ill. 327. In this last case the notes secured by a trust deed, although given without consideration, were held good, while the trust deed was ordered canceled. And reasonable care must be exercised by the maker in the transaction which results in the note, or the defense of fraud and circumvention is not allowed him as against an innocent holder. Taylor v. Atchison, 54 Ill. 196; Leach v. Nichols, 55 Ill. 273; Mead v. Munson, 60 Ill. 49; Swannell v. Watson, 71 Ill. 456; Homes v. Hale, 71 Ill. 552.

In Mead v. Munson the court said: "Under the proof we cannot infer the fraud and circumvention intended by the statute which shall void the note. To do so would be to offer a premium for gross negligence.

"The maker of the note could read and write with facility and could not have been imposed upon if he had exercised the most ordinary prudence."

The defense of "fraud and circumvention" to negotiable paper is a purely legal and statutory one. Had there not been the matter of security involved in the case at bar it would not have been within the ordinary equitable jurisdiction of the court at all. It is true that once having taken cognizance of the cause, it was within the power of a court of equity to go on and adjust the rights of all parties to the controversy. But it was not in this case obligatory on it to do so; and in view of the extremely meagre and unsatisfactory evidence concerning the execution of the notes in question, presented by either party in the case at bar, we do not think it was desirable or proper for it to do so. For the same meagre and unsatisfactory evidence is relied on by the appellant to justify its demand for a money decree on these notes in its favor. It is true

that in a suit at law, the presentation of the notes (and proof of signature, if denied) would make a *prima facie* case, and place on the defendant the burden of proving her defense. But the cross-bill of the appellant under the record in this case in equity was, we hold, properly dismissed. Its equitable justification was the claim of right to foreclose the security involved. That right was shown not to exist. We think, in view of the record in this case, that with the denial of the validity of the trust deed held by the Bank and the dismissal of its bill, the chancellor should have ended his adjudication of rights between the Metropolitan Trust & Savings Bank and Lillie B. Murray, leaving to the former the right to prosecute at law any claim that it may have been advised it had on the notes in question, and to the latter the right to resist the claim on the ground either of forgery, of fraud and circumvention, or of any other defense which she in her turn may have been advised was available to her. In such a litigation the questions of fact involved would be submitted to a jury, we might hope with greater precision and more enlightening evidence. The burden of proof would then, too, be properly distributed.

We have modified the decree in this case by changes which adjudicate somewhat differently the relative rights of appellant and appellee herein, in accordance with the views above expressed. The other provisions of the decree are of course unchanged. The form of the decree after modification is filed by us contemporaneously herewith.

As thus modified the decree of the Circuit Court is affirmed. In this court the costs are to be taxed against appellee, however.

*Decree modified and affirmed.*

This case was considered and decided before MR. JUSTICE SMITH took his seat in the court, and he took no part therein.