# Edward Bezely, Appellant, v. M. F. Searl et al., Appellees.

## Gen. No. 7,240.

1. EQUITY—*fraud in consideration of note not grounds for equitable relief.* A bill by the maker of a promissory note given in part payment of the purchase price of horses against the seller of the horses, the payee of the note and the assignee thereof, alleges no ground for equitable relief on the ground of fraud, by allegations of fraudulent representations by the seller of the horses going only to the consideration for the note, and of fraudulently inserting the name of a payee other than such seller, which show on their face that complainant had full opportunity to examine the note and discover the fraud before signing it, and which do not bring the case within the provisions of Negotiable Instruments Act, Cahill's Ill. St. ch. 98, ¶ 11, as to fraud in obtaining the making and execution of a negotiable instrument.

2. EQUITY—*allegation on information and belief of mala fides of assignee of note, demurrable.* A bill for equitable relief against a promissory note made by complainant and held by an assignee of the payee, is demurrable for failure to allege positively that the assignee was not an innocent purchaser before maturity, for value and without notice, where such matters are alleged on information and belief, especially where other allegations negative such allegations.

3. EQUITY—*bill for equitable relief against note demurrable where existence of adequate legal remedy alleged.* A bill for equitable relief against a seller of horses, the payee of a note given by complainant for the purchase price of such horses and the assignee of the note, is demurrable where it appears on the face thereof, that, although the payee is insolvent, the seller who is charged with fraud is solvent, and that complainant has an adequate legal remedy at law against him, and especially where it alleges the pendency of two actions at law, involving the matters and transaction alleged in the bill, in which adequate legal relief can be afforded.

4. EQUITY—*allegation of grounds for equitable jurisdiction requisite to granting of equitable relief.* Equity will not retain jurisdiction of a cause and grant equitable relief, although some grounds therefor may appear, where the bill shows on its face that complainant has adequate legal remedy and fails to allege facts giving equitable jurisdiction.

Appeal by plaintiff from the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at the April term, 1923. Affirmed. Opinion filed August 13, 1923.

J. L. MURPHY, for appellant.

J. L. SPAULDING, for appellees.

MR. PRESIDING JUSTICE PARTLOW delivered the opinion of the court.

Appellant, Edward Bezely, filed his bill in the circuit court of Bureau county against M. F. Searl, otherwise called Millard Searl, F. W. Searl, otherwise called Forest Searl, Ray D. Gore and Citizens' National Bank of Princeton, Illinois, in which he sought relief from a promissory note signed by appellant and Gore. A demurrer was filed to the amended and supplemental bill and the demurrer was sustained. The bill was dismissed. and this appeal was prosecuted.

The amended and supplemental bill is quite lengthy, contains many repetitions and it will be impossible to set it out in full. In substance it alleges that on February 17, 1919, Bezely wanted to purchase a team of horses from Millard Searl. He saw the horses in a pasture but could not get close enough to them to make a careful examination. Searl said they were sound and worth $250. Bezely relied on this statement and on February 18, 1919, purchased the horses for $250, paying $45 in cash, and giving his note for $205, due in one year, signed by himself and by Ray D. Gore as surety. When the note was given to the makers for their signature they did not notice that it was payable to F. W. Searl and not to Millard Searl. A few days after obtaining the horses, Bezely ascertained, after working them, that they were not as represented. Both horses were windbroken. One of them had a spavin of long standing, they were otherwise

blemished and defective, and were worth from $100 to $150. Some of these defects, especially the one with reference to their windbroken condition, could not be ascertained by a casual examination, and could only be ascertained when an attempt was made to work them. After learning their true condition, Bezely, on March 12, 1919, took the horses back to the place from which he obtained them and left them with some one in charge of the place. On the same day he told Millard Searl that he had been defrauded, that he had returned the team, and he demanded his money and note but Searl refused to make restitution. On February 12, 1920, Bezely received a notice from the Citizen's National Bank of Princeton, Illinois, to the effect that the note would be due February 18, 1920, and payment was demanded. Bezely and his attorney went to the bank and examined the note and for the first time ascertained that it was payable to F. W. Searl instead of to Millard Searl, and that it had been indorsed by both of them to the bank.

The bill further alleged that Bezely, on his best judgment, information and belief, was of the opinion that if the Citizen's National Bank ever did purchase the note and become the owner thereof, it did so with full knowledge of all the matters above set forth, and that it did not become an innocent purchaser before maturity, in due course, for a valuable consideration; that the bank was conspiring with Millard Searl and F. W. Searl to prevent Bezely from having the defense mentioned above in an action at law; that Bezely believed that F. W. Searl and Millard Searl conspired to have the name of F. W. Searl inserted as payee in the note, because they thought Bezely would fail to notice the name of F. W. Searl written in the note, and his name as payee would complicate the rights of Bezely for the reason that F. W. Searl was impecunious and insolvent, and Millard Searl was not insolvent or impecunious.

The bill further alleged that in April, 1919, Bezely brought suit against Millard Searl to recover the $45 paid, and to recover possession of the note or the amount thereof, which action was in trover. Judgment against Bezely by default was entered and he appealed to the city court of Spring Valley, Illinois, and the suit is still pending; that Bezely in bringing this action at law did not adopt the proper remedy by which to obtain his rights and it is the intention of Bezely to dismiss said suit, if he does not change his mind; that Bezely intends to ask this court to make such order as to that suit as this court shall have jurisdiction to make.

The bill further alleged that it may be, and Bezely believes the fact to be, that the Citizen's National Bank did purchase and become the owner of the note without notice of the matters set forth in the bill, before the note became due, and that it is an innocent holder before maturity, and that it always intended to bring suit against Bezely and Gore to collect the note; but that Bezely has been unable to ascertain to a certainty, and cannot ascertain, whether or not the note was purchased by the bank before maturity, but believes that it was.

The bill further alleged that on December 27, 1919, before the commencement of this suit, Bezely received a notice signed by Millard Searl informing Bezely that he had a lien on the horses for their care and feed, amounting to $100, and unless the same was paid by January 6, 1920, Searl would sell the horses to enforce the lien; that Bezely has been informed that on January 6, 1920, Millard Searl sold the horses, or pretended to sell them, to F. W. Searl for $150; that Millard Searl, if he did sell them, has kept the money and has never offered to pay the same to Bezely, although his pretended lien amounts to only $100; that Gore is made party defendant so as to assert his rights; that Bezely was hindered from procuring the

horses by the transaction, to his damage of $100; that he spent money traveling to and from the premises of F. W. Searl to the amount of $14; that he has incurred attorney's fees in the sum of $75, and will incur further damages for attorney's fees; that he has incurred traveling expenses in the sum of $6, and other expenses will be incurred; that Millard Searl is liable for said damages, and it may be that other defendants are jointly liable with Millard Searl; if chancery has no jurisdiction in this cause he will have to bring a separate action at law for such damages; that on March 18, 1922, the Citizen's National Bank commenced an action against Bezely and Gore purporting to be founded on said note; that the bank, Millard Searl and F. W. Searl, in instituting said common-law suit, conspired together to deprive the defendants in said common-law suit of certain defenses that belonged to them, and to that end failed to make Millard Searl and F. W. Searl parties defendant to said common-law suit; that Bezely has a defense to such action at law but will never be able to introduce the defense of total or partial failure of consideration, or that the note was never delivered by him, or that it was procured by false and fraudulent representations as to the consideration, because it is apparent that the plaintiff in said suit will claim that it was an innocent purchaser before maturity without notice, and that the plaintiff is very likely to successfully establish said claim; that Bezely is willing to do what equity shall require; that if in this action in chancery it shall be proven the Citizen's National Bank purchased the note for a valuable consideration before maturity, without notice, Bezely offers to pay the note and interest and costs, so as to make the bank whole; that Bezely is without remedy except in a court of equity.

The prayer of the bill is that the contract for the purchase of the horses be rescinded; that the note be ordered given back to the makers; that Millard Searl

and F. W. Searl be required to pay Bezely. the $45, together with all damages; that an accounting may be taken to ascertain the amount of such damages; that the bank be restrained by injunction from proceeding with the action at law commenced on March 18, 1922, until such time as this proceeding may be tried.

There are several reasons why the demurrer to this bill was properly sustained. Section 10, ch. 98, being the Negotiable Instruments Act (Cahill's Ill. St., p. 2354), provides that: ''If any fraud or circumvention be used in obtaining the making or executing of any of the instruments aforesaid, such fraud or circumvention may be pleaded in bar to any action to be brought on any such instrument so obtained, whether such action is brought by the party committing such fraud or circumvention, or any assignee of such instrument.'' The fraud referred to in 'this section, which will avoid a note in the hands of an assignee, must relate to the execution of the note, and not to the consideration of the note. *Connolly v. Dammann*, 232 Ill. 175; *Freehold Bank v. Kennedy & Wright Co.*, 148 Ill. App. 310; *Cartinhour v. White*, 157 Ill. App. 431. Fraud in the execution of the note does not avail unless the maker was induced to sign a note prejudicially different from the instrument he was willing to sign, and which he thought he was signing. *Sinnickson v. Richter*, 140 Ill. App. 212. The fraud and circumvention must consist of some trick or device which induced the making of one kind of an instrument under the belief that the maker was giving one of a different character. *Gray v. Goode*, 72 Ill. App. 504. To maintain the defense of fraud in the execution, the maker must prove due care on his part in the execution of the note. *Swannell v. Watson*, 71 Ill. 456; *Holmes v. Hale*, 71 Ill. 552; *Murphy v. Schoch*, 135 Ill. App. 550; *Murray v. Metropolitan Trust & Savings Bank*, 159 Ill. App. 473. Where the maker can read, and signs a promissory note without reading it, some artifice must

be shown by which he was prevented from reading it, otherwise he is guilty of negligence. *Wheeler & Wilson Mfg. Co. v. Long*, 8 Ill. App. 463. If the maker fails to read a warrant of attorney in a promissory note, he is guilty of negligence. *Yeomans v. Lane*, 101 Ill. App. 228.

Appellant in his bill makes several allegations of fraud. He alleges that Millard Searl falsely and fraudulently represented that the horses were sound, whereas in truth and in fact they were not sound. This allegation of fraud is not such fraud as would avoid a note in the hands of an innocent purchaser. This fraud only amounts to a misrepresentation which goes to the consideration of a note. It might be set up as a breach of warranty upon which a partial failure of consideration might be based, but it is not such fraud and circumvention under section 10 of the statute as would be a defense against an assignee of the note as far as execution was concerned. The only fraud alleged in the bill which might go to the execution of the note under section 10 was the allegation with reference to the substitution of F. W. Searl for Millard Searl as payee. The allegation on that point is that Bezely did not see whose name was written in as payee, because he was dealing with Millard Searl and thought the note was payable to Millard Searl; that he took the note to Gore who signed it; that both Gore and Bezely saw the name Searl as payee but failed to notice the initials. Under these allegations, which are to be taken most strictly against the pleader, we have the right to assume that Bezely had the note in his possession and had full opportunity to read and examine it before he signed it. He knew he was signing a promissory note for $205 due in one year. He signed exactly the kind of note which he had agreed to sign except as to the name of the payee. These allegations fall far short of coming within the construction placed by the courts upon section 10 of

the statutes, and the demurrer was properly sustained as to this feature of the bill.

The most that can be said of the other allegations of the bill with reference to fraud is that they show a breach of warranty as to the horses, and a failure of consideration in whole or in part. Section 9 of the Negotiable Instruments Act (Cahill's Ill. St., p. 2354), provides for the defense of failure of consideration in whole or in part, but such defense does not apply to any innocent assignee of the note, for value, before maturity, without notice. The Citizen's National Bank was the assignee of this note. The allegations of the bill with reference to the circumstances under which the bank held the note are quite peculiar. In one paragraph it is alleged that Bezely says on his best judgment, information and belief that the bank is not the holder of the note for value, before maturity, without notice. In another paragraph he alleges that it may be, and he believes the fact to be, that the bank is a holder for value before maturity without notice. Notwithstanding these conflicting allegations, he prays that the note be given back to the maker and canceled, and that the bank be restrained from prosecuting its action at law against appellant. In order to entitle Bezely to any relief against the bank, the bill should allege that the bank was not an innocent purchaser for value, before maturity, without notice. These must be positive averments, and if the bill does not positively allege these facts, it would be subject to demurrer. An allegation on information and belief does not amount to a positive allegation of fact. *Lundahl v. Hansen*, 46 Ill. App. 424. If the bank was an innocent holder, it was entitled to maintain its action at law and was not required to defend in equity. The bill was subject to demurrer under these allegations, and the demurrer was properly sustained.

If the bank was an innocent holder and Bezely was compelled to pay the note to the bank, this would not

prevent him from maintaining an action at law against
Millard Searl to recover on a breach of warranty the
$45 paid, together with the amount which Bezely may
have been compelled to pay the bank on the note. The
allegation of the bill is that Millard Searl is solvent
and F. W. Searl is insolvent. If Millard Searl is sol-
vent, Bezely has an adequate remedy at law and can
sue him and collect the damages sustained by him if
the evidence justifies it. If he has an adequate remedy
at law, then equity has no jurisdiction, and the de-
murrer was properly sustained on this ground. *Gould
v. Sternburg,* 105 Ill. 488; *Gore v. Kramer,* 117 Ill.
176; *Durand & Co. v. Gray,* 129 Ill. 9.

The bill shows upon its face that there are two ac-
tions at law now pending where the questions in this
case can be adequately settled. One of them is a suit
by the bank on the note, and the other is a suit by
Bezely against Searl for damages. In the first case,
Bezely can file a plea of failure of consideration, and
that the bank is not an innocent holder for value, be-
fore maturity, without notice. If his evidence sus-
tains his contention under this plea, the whole contro-
versy can be settled in that action. If, on the other
hand, he fails to establish these contentions for the
reason that the bank is an innocent holder and he is
compelled to pay the note, he can recover the amount
of the note from Searl in his action against Searl
based upon a failure of consideration. In either event
he has an adequate remedy at law. This fact appears
upon the face of the bill and for this reason the de-
murrer was properly sustained.

Notwithstanding the fact that this bill is defective
in many respects and shows that appellant has an ade-
quate remedy at law, we are urged by appellant to
hold that the bill presents a case for equitable relief.
Appellant insists that this court would not be assuming
a position very far in advance if we held that equity
had jurisdiction under the facts alleged. The grounds

upon which equity jurisdiction is based are well understood. These rules are binding upon all parties litigant and upon all courts. If the facts stated do not come within equity jurisdiction, this court has no right to hold otherwise. The bill was not sufficient upon its face and the chancellor properly sustained the demurrer, and the decree will be affirmed.

*Decree affirmed.*