Woodlawn Security Finance Corporation, Appellant, v. John P. Doyle, Appellee.

Gen. No. 32,987.

Opinion filed February 27, 1929.

NOBLE & MARTIN and MCELROY, ROLLO, EBERHARDT & QUIGLEY, for appellant; CHARLES F. MCELROY, of counsel.

WEST & ECKHART, for appellee.

MR. JUSTICE RYNER delivered the opinion of the court.

The plaintiff, on October 24, 1927, obtained a judgment by confession against the defendant for $335 in the municipal court of Chicago. The action was upon a note signed by the defendant. Upon motion duly made, the judgment was opened and the defendant was

given leave to defend and file a jury demand. The jury found the issues against the plaintiff. The usual motions for a new trial and in arrest of judgment were made and overruled. The court thereupon vacated the judgment of October 24, 1927, and entered a judgment in favor of the defendant. The plaintiff appealed.

The note, as originally executed, followed, on the same sheet of paper, an order or contract for the furnishing by the payee to the maker of the note of advertising space on the dial of a clock, for a consideration of $25 per month. There was a perforated line between the two instruments. They read as follows:

"Federal Publicity Company

Chicago, Illinois       Accepted by .........

Date July 1st 1927.

"You are hereby authorized to place one advertisement on the dial of the Kei-Lac Advertising Clock installed 71st St. & Jeffery Ave. This contract is for a period of twelve months from the date of the first display of the advertisement. In consideration of the services rendered hereunder, .......... agree to pay you the sum of $25.00 per month. You agree to keep the clock mentioned herein operating regularly and in good order during the life of this contract. If, for any reason, the exhibition of the advertisement should be interrupted, the advertising will be extended for such interrupted service, and in no case shall such interruption constitute a breach of this agreement.

"There are no understandings, agreements, representations, or warranties, expressed or implied, made by any representative of this Company not printed herein.

"All contracts subject to approval of Home Office.

"In case wish to discontinue 30 day written note

H. J. Klein

[Perforated line.] ...............................

$300.00       July 1st, 1927.

"I promise to pay to Federal Publicity Company, or

order, Three Hundred Dollars ($300.00) for value received, payable on August 23, 1927, and $25.00 on same date of each month thereafter until paid in full. All payments are due and payable on default of any.

"And to secure the payment of said amount . . . . . . . hereby authorize, irrevocably, any attorney of any Court of Record to appear for . . . . . . . . in such Court, in term time or vacation, at any time hereafter, and confess a judgment, without process, in favor of the holder of this Note, for such amount as may appear to be unpaid thereon, together with costs and . . . . . . . . dollars attorney's fees, and to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution, upon such judgment, hereby ratifying and confirming all that . . . . . . . said attorney may do by virtue hereof.

Name       J. P. Doyle

By . . . . . . . . . . . . . . . . . . . . . . . . . .

Address   7050 Jeffery Ave

Payable at . . . . . . . . . . "

About three weeks after the execution of these documents, the note was sold by the payee, Federal Publicity Company, to the plaintiff for a valuable consideration. The note had been detached from the contract at the perforated line, and the plaintiff did not receive or see the contract. By whom the separation was made is not disclosed by the evidence. The original contract was not produced upon the trial of the case and there is some doubt whether it contained the notation at the bottom providing for a discontinuance of the service upon 30 days' notice, found in the copy retained by the defendant.

Upon the trial of the case, counsel for the defendant insisted upon presenting his evidence first. He was permitted to do so. This is not the correct practice. Upon the opening of a judgment by confession the parties should proceed to put in their proofs in the usual order. The method pursued, however, did not preju-

dice the rights of either litigant. *Morris v. Taylor*, 199 Ill. App. 588.

The plaintiff contends that it was a holder, in due course, of the note within the meaning of the Negotiable Instruments Act and held it free from any defense which the maker might interpose against the payee. The principal contentions of the defendant are that the note, with the contract attached, was non-negotiable; that the separation of the two instruments constituted a material alteration; that the plaintiff, at the time it brought the note knew that it was executed in connection with a contract between the maker and the payee; that the defendant's signature to the instrument was obtained through fraud and circumvention and that the plaintiff failed to establish that it was a holder in due course of the paper.

The defendant testified that when H. J. Klein, the representative of the assignor of the note, presented the two instruments for his signature, they were on the same piece of paper with the contract at the top; that he signed the contract and was requested to sign his name again at the bottom of the paper; that he started to read the note but was told that it was just the same as the contract; that he accepted Klein's word and signed the note without reading; and that he assumed that the note was a duplicate or copy of the contract. Klein did not testify. The evidence shows that the defendant had followed the occupation of salesman for 28 years and that he had no difficulty in reading and understanding the American language. He admitted that he could have read the note if he "wanted to." No evidence was introduced showing that the plaintiff had any knowledge of the circumstances under which the defendant's signature was obtained.

Section 10 of the Statute of 1874 relating to promissory notes, bonds, due bills and other instruments in writing, Cahill's St. ch. 98, ¶ 11, provides that:

"If any fraud or circumvention be used in obtaining

the making or executing of any of the instruments aforesaid, such fraud or circumvention may be pleaded in bar to any action to be brought on any such instrument so obtained, whether such action be brought by the party committing such fraud or circumvention, or any assignee of such instrument.''

This section was not, by express terms or by implication, repealed by the Negotiable Instruments Act of 1907. Section 57 of the latter Act, Cahill's St. ch 98, ¶ 77, provides that a holder in due course of an instrument holds it free from any defect of title of prior parties and also free from defenses available to prior parties among themselves, except the defect and defense specified in section 10 of the Act of 1874.

In the case of *Homes v. Hale,* 71 Ill. 552, the Supreme Court of this State held that the exercise of due diligence and attention on the part of a maker of negotiable paper is a necessary element in his defense that the execution of the instrument was obtained by fraud and circumvention, when such defense is interposed in an action to recover upon the instrument brought by an innocent assignee before maturity. See also the case of *Bezely v. Searl,* 230 Ill. App. 393, and cases cited.

The law has long recognized the commercial necessity for encouraging the free and unrestricted circulation of negotiable paper among those who act in good faith and without notice of infirmities. The defense specified in the statute was not designed to protect the maker of negotiable paper from his own negligence to the prejudice of an innocent third party.

The defendant failed to avail himself of the opportunity to read the note. He could read but did not. He preferred to rely upon the representations of a stranger. The only excuse he offered for his carelessness was that he was in a hurry. The jury, if properly instructed, could hardly have found otherwise than that the defendant was guilty of negligence.

The court gave two instructions to the jury on this issue. They read as follows:

"3. You are further instructed as a matter of law that if the signature to a note is obtained by trick, artifice, fraud, duress or undue influence, then the party signing such note is not liable for its payment, and if said note should come into the hands of a third party, the party signing the note is nevertheless not bound by its terms."

"4. You are further instructed as a matter of law that if a document, by way of note or contract, or anything else, is submitted to a man for his signature, and that man is in possession of his faculties, and if he can read and write the language contained in that document, he is chargeable with the contents of that document, even though he did not read it, unless he was prevented from reading that document by some trick or artifice or fraud, or some substitution of that document, of any kind or character.

"You are further instructed that a man under those circumstances must act as a reasonable prudent man would act under like circumstances."

It is urged that instruction number 3 was erroneous because it ignored the duty of the maker of a note to use due care, and that the language used in the instruction is descriptive of the character of fraud, which by the terms of the Negotiable Instruments Act, renders the title to negotiable paper defective but valid in the hands of a holder in due course. The first alleged defect was to a certain extent cured by instruction number 4. As to the second objection, the instruction informed the jury that obtaining the signature to a note by "trick, artifice, fraud, duress or undue influence" makes the instrument unenforceable in favor of a third party. The jury were not told whether it made any difference if the third party happened to be a holder in due course. Under section 10 of the Statute of 1874,

Cahill's St. ch. 98, ¶ 11, "fraud, or circumvention" used in obtaining the making or execution of a note bars recovery by an assignee. Under section 55 of the Negotiable Instruments Act, Cahills' St. ch. 98, ¶ 75, if a note or the signature to it is obtained by "fraud, duress, or force and fear, or other unlawful means," etc., the title to the paper is defective but good in the hands of a holder in due course. It is impossible to determine from a reading of the instruction whether it was designed to state the law relating to defective instruments, or to those wholly void. What significance the jury attached to the words, "duress or undue influence," we cannot know. There was no proof of either.

On the issue as to whether there was a material alteration of the note, the court instructed the jury as follows:

"5. You are further instructed that an instrument will be vitiated by any alteration affecting its negotiability, or detaching a condition from a note, where doing so renders the note negotiable."

"6. The court instructs the jury that that is a material alteration which so changes the terms of an instrument as to give it a different legal effect from that which it originally had, which works some change in the rate of interest or the obligation of the parties."

"7. The court instructs the jury that the cutting off of a memorandum of contract attached to a note, which expresses the consideration upon which the note was given or made, is such a material alteration of the contract as will render the note void."

Instructions numbered 5 and 6, in effect, submitted issues of law for the determination of the jury. It was left for them to decide as a matter of law what condition in a note, if detached, renders the instrument negotiable and also what alteration in its terms will result in changing its legal effect. This was error. *Doggett*

*v. Greene,* 254 Ill. 134. On the question of alteration there were two principal issues of fact. One was whether the original contract contained a provision for discontinuance of the advertising service upon the giving of 30 days' notice. The other was whether the plaintiff had knowledge that the parties had entered into a contract in connection with the execution of the note. Neither issue was referred to in any of the instructions. By this omission the jury were left uninformed as to what effect, if any, their findings upon these issues should have in arriving at a verdict.

Where it appears that an instrument has been altered, questions as to when the alteration was made and what the surrounding circumstances were, present issues of fact for the consideration of the jury. What constitutes a material alteration is a question of law for the court's decision, and it is error for the court to submit this issue to the jury. *Milliken v. Marlin,* 66 Ill. 13; *Snell v. Davis,* 149 Ill. App. 391.

Instruction number 7 was peremptory and told the jury that the detaching from a note of a memorandum of contract expressing the consideration for the note constituted a material alteration and rendered the instrument void. This instruction is bad for several reasons. Under section 133 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 145, a holder in due course of an altered instrument may enforce payment of it according to its original tenor. It is not void. There is evidence in the record tending to show that the plaintiff knew from other transactions that its assignor was engaged in negotiating notes which were executed in connection with contracts for advertising space. Knowledge of this general character, however, would not be sufficient to impute to it notice that in the particular case the usual form of contract had been departed from and that the solicitor had altered the terms contrary to the express inhibition against so doing, contained in the printed form.

Under section 3 of the Statute on Negotiable Instru-

ments, Cahill's St. ch. 98, ¶ 23, a note is not rendered non-negotiable by virtue of the fact that it contains "a statement of the transaction which gives rise to the instrument." In the case of *Doyle v. Considine*, 195 Ill. App. 311, a promissory note contained a statement that it was given in accordance with a land contract of the same date between the maker and the payee. An assignee brought suit upon the note. The court held that the instrument was negotiable and that any inquiry as to what was done under the contract was incompetent.

In the case of *Siegel, Cooper & Co. v. Chicago Trust & Sav. Bank*, 131 Ill. 569, the Supreme Court of this State held a promissory note negotiable which read as follows:

"$300.                    Chicago, March 5, 1887.

"On July 1, 1887, we promise to pay D. Dalziel, or order, the sum of three hundred dollars, for the privilege of one framed advertising sign, size ..... x ..... inches, one end of each of one hundred and fifty-nine street cars of the North Chicago City Railway Co., for a term of three months, from May 15, 1887.

Siegel, Cooper & Co."

The facts disclosed that Dalziel, the payee of the note, after its negotiation, forfeited his right to use and furnish the advertising space referred to in the instrument. An assignee of the note brought suit and the plea of failure of consideration was interposed. The court held the plea bad, saying:

"It is not contended that the indorsee had any other notice than that contained in the instrument itself, and it is apparent that at the time of its indorsement, which was the day of its execution, no right to the consideration had accrued to the makers. It is a promise to pay a certain sum of money at a day certain, for a consideration thereafter to be rendered, and depends for its validity upon the implied promise of the payee to furnish the consideration at the time and in the manner stipulated,—that is, it is a promise to pay a sum certain on a particular day, in consideration of the prom-

ise of the payee to do and perform on his part. A promise is a valuable consideration for a promise.

"But the question remains, whether the statement or the recital of the consideration on the face of the instrument impairs its negotiability, and, in this instance, amounts to a condition precedent. The mere fact that the consideration for which a note is given is recited in it, although it may appear thereby that it was given for or in consideration of an executory contract or promise on the part of the payee, will not destroy its negotiability, unless it appears, through the recital, that it qualifies the promise to pay, and renders it conditional or uncertain, either as to the time of payment or the sum to be paid." See also *Weber v. Keith Ry. Equipment Co.*, 248 Ill. App. 258, and cases cited.

The statute, Cahill's St. ch. 98, ¶ 146, defines what are material alterations. An alteration is material which changes:

"(1)  The date.

(2)  The sum payable, either for principal or interest.

(3)  The time or place of payment.

(4)  The number and the relations of the parties.

(5)  The medium or currency in which payment is to be made.

Or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration."

The contract in question contains no reference whatever to the note. Furthermore, there is no inconsistency or repugnancy between the two instruments. Even if we assume that the discontinuance clause was indorsed upon the original contract, there is nothing in the instrument changing or modifying in any respect the terms of the note.

Furthermore, even if defendant's assumption that the provision for discontinuing the service should be read into the note be adopted as correct, the failure of

the assignee to perform or the exercise of the defendant's right to stop the service would at most constitute merely a failure of consideration. The plaintiff was not bound to anticipate either contingency, and the note was not made non-negotiable because of the mere possibility of failure of consideration after it had purchased the note. *Siegel v. Chicago Trust & Sav. Bank, supra; Henneberry v. Morse,* 56 Ill. 394; *Ehrler v. Worthen,* 47 Ill. App. 550.

In the *Siegel* case the court said:

"The most that can be said of a recital in the instrument itself, of the consideration upon which it rests, is, that the indorsee, taking it before maturity, is chargeable with notice of the recital. Such recital, however, is not sufficient, of itself, to advise him that there was, or would necessarily be, a failure of consideration, but if, at the time of the indorsement, the consideration has in fact failed, the recital might be sufficient to put him upon inquiry, and, in connection with other facts, amount to notice."

Finally, there are authorities holding that even if the plaintiff had actual notice of the provisions of the contract, the defense of failure of consideration would not be available to the defendant. The reason given for the rule is that where the consideration for an instrument is the promise of the payee to perform certain acts in the future, the consideration cannot fail because it is the promise to perform, and not the performance, which constitutes the real consideration. *Gage v. Lewis,* 68 Ill. 604; *Stellwagen v. Schmidt,* 234 Ill. App. 325, and cases cited.

Instructions numbered 5, 6 and 7 were the only instructions given purporting to advise the jury as to the law on one of the vital issues in the case. They were clearly erroneous.

The judgment of the municipal court of Chicago is, accordingly, reversed and the cause remanded.

*Judgment reversed and cause remanded.*

HOLDOM, P. J., and WILSON, J., concur.